UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br> Plaintiffs, <br> v. <br> SAFRAN GROUP, S.A., et al., <br> Defendants. | Case No. 15-CV-00746-LHK <br><br> **ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND** <br><br> Re: Dkt. No. 45 |

Relators Vincent Hascoet ("Hascoet") and Philippe Desbois ("Desbois") (collectively "Relators"), on behalf of the United States of America (the "United States") and the State of California ("California") (collectively the "Government Plaintiffs"), sued Safran Group, S.A. ("Safran Global"), Morpho, S.A. a.k.a. Safran Identity & Security, S.A. ("Safran Security"), and Safran U.S.A., Inc. ("Safran USA") (collectively "Defendants") for violation of the federal False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the California False Claims Act ("California FCA"), Cal. Gov't Code § 12651 *et seq.* Before the Court is Defendant Safran USA's Motion to Dismiss the Second Amended Complaint. ECF No. 45 ("Mot."). Having considered the submissions of the parties, the relevant law, and the record in this case, the Court GRANTS Safran

1

United States District Court <br> Northern District of California

USA's Motion to Dismiss the Second Amended Complaint with leave to amend.

## I.      BACKGROUND

### A.  Factual Background

This case is an FCA and California FCA *qui tam* action in which the Relators are suing Defendants on behalf of the United States and California.  Relators are allegedly former employees of Defendants, insiders, who bring this action to recover on fraudulent claims for payment allegedly submitted to the United States and California.  Specifically, Relators allege that Defendants sold the United States and California Russian fingerprint identification technology while representing it to be French technology.  Additionally, Relators allege that Defendants expressly or impliedly certified that Defendants had complied with the Sherman Antitrust Act, 15 U.S.C. §§ 1–7, and The Trade Agreements Act of 1979 ("Trade Act"), 19 U.S.C. §§ 2501–581, even though Defendants were allegedly in violation of both statutes.  The Court first describes the corporate structure of Defendants and related entities as alleged in the Second Amended Complaint ("SAC"), then describes Relators' relationship with Defendants, and finally describes the violations alleged in the SAC.

Relators allege that Defendant Safran Global is a corporation that was formed under the laws of France in 2005 through the merger of Sagem Securite S.A. ("Sagem") and Snecma S.A. ("Snecma").  SAC ¶ 9.  Although Safran Global was allegedly formed through the merger of Sagem and Snecma, Relators allege that both Sagem and Snecma continue to operate as subsidiaries of Safran Global.  *Id.* ¶¶ 11–12.  Sagem "develops and supplies high-precision opto-mechanical, electronics, and optical solutions for defense, astronomy, research, and industry applications worldwide."  *Id.* ¶ 11.  Snecma "designs, develops, produces and markets engines for civil and military aircraft, launch vehicles and satellites."  *Id.* ¶ 12.

Defendant Safran USA is a Delaware corporation that is 97.5% owned by Safran Global and 2.5% owned by Defendant Safran Security.  *Id.* ¶ 10.  Defendant Safran Security is a French corporation and, until May 2016, was named "Morpho."  *Id.*  Safran Security is 75% owned by

Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

Safran Global and 25% owned by Safran USA.  *Id.* ¶ 13.  Relators allege that Safran Global does business in the United States and in California as Safran USA and Safran Security.[1]  *Id.*

Relators allege that they were employees of Defendants and entities related to Defendants. *Id.* ¶ 4 ("Both are former employees [of] entities of [Safran Global].").  Relator Desbois is a French national who lives in Russia.  *Id.* ¶ 6.  Desbois worked for Defendants or entities related to Defendants from November 2007 to September 2014.  *Id.*  Specifically, Desbois first was the Chief Financial Officer ("CFO") in the Russian branch of Safran Global.  *Id.*  Later, Desbois served as the Chief Executive Officer ("CEO") of "Morpho Russia."[2]  *Id.*  Desbois' job at "Morpho Russia" ended in September 2014, and it is unclear from the SAC whether he quit or was terminated.

Relator Hascoet is also a French national that lives in Russia.  *Id.* ¶ 7.  From July 23, 2012 to May 31, 2014, Hascoet was the Deputy Director of the Russian branch of PowerJet.  *Id.* PowerJet was a "joint venture" between Snecma and another company named "NPO Saturn."  *Id.* Relators provide no further detail about PowerJet or NPO Saturn.  Relators allege that Hascoet

---

[1] The SAC states that the information concerning Safran USA is largely obtained from the Safran USA website, located at http://www.safran-usa.com. SAC ¶ 10.  Accordingly, Safran USA requests that the Court take judicial notice of a brochure available on the Safran USA website. ECF No. 45-3.  "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint [or whose contents are essential to a claim] and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'"  *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998) (as amended).  Therefore, the Court may consider the brochure without converting the instant motion to dismiss into a motion for summary judgment.

Safran USA additionally requests judicial notice of two administrative decisions of the United States Customs and Border Protection Service in the Office of International Trade. ECF No. 45-3.  The Court may take judicial notice of "matters of public record," including decisions by courts and administrative agencies.  *United States v. 14.02 Acres of Land More or Less in Fresno Cty.*, 547 F.3d 943, 955 (9th Cir. 2008) ("Judicial notice is appropriate for records and reports of administrative bodies."  (citation and internal quotation marks omitted)).  Decisions by United States Customs and Border Protection Service are such "matters of public record."  *Vizio, Inc. v. Funai Elec. Co.*, 2010 WL 7762624, at *2 (C.D. Cal. Feb. 3, 2010) (taking judicial notice of decision of the United States Customs and Border Protection Service).  Therefore, the Court takes judicial notice of the two decisions of the United States Customs and Border Protection Service in the instant case.
[2] It is unclear, but Relators imply that Morpho Russia and Morpho, S.A., to which this order refers as Safran Security, are the same entity or branches of the same entity.

3

Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

wrote a "comprehensive report" for Snecma in which he outlined "myriad acts of bribery, unlawful gifts, bogus transactions, tax evasion, and false certifications of compliance with laws." *Id.* The SAC does not specify whether these actions in the report occurred in PowerJet alone or occurred as part of Safran Global's operations more generally. Relators allege that Hascoet's employment was terminated due to his "complaints and reports about these compliance issues." *Id.*

During their tenures at Defendants and entities related to Defendants, Hascoet and Desbois "engaged in extensive professional communications with one another regarding compliance issues," including the issues that are the focus of the instant suit. *Id.* Allegedly, "Desbois and Hascoet also closely collaborated in regard to communicating with the United States Securities & Exchange Commission ("SEC") regarding Defendants' serious issues of noncompliance." *Id.*

Based on this alleged insider information, Relators make three allegations as the basis of their FCA and California FCA claims. First, Relators allege that Defendants sold fingerprint identification products created by Safran Security to the United States and California. *Id.* ¶ 14. Relators allege that "Defendants falsely claimed that the technology used in such [Safran Security] fingerprint identification technology was, and is, *French* technology, when in fact it was prohibited *Russian* technology." *Id.* Relators allege that they learned of this misrepresentation because Sagem, one of the two companies that merged to become Safran Global and now acts as a subsidiary of Safran Global, entered a technology license agreement with Papillon ZAO ("Papillon") in which Papillon licensed its technology to Sagem. *Id.* ¶ 17. The licensing agreement states that the technology that was licensed to Sagem was Russian technology. SAC ¶ 18. Allegedly, this Russian technology is the "basis" of the Safran Security fingerprint identification products. *Id.* ¶ 17–20.

Second, Relators allege that Defendants and Papillon reached an agreement where they would "divvy up the world market for fingerprint identification products, and would not compete in each other's market." *Id.* ¶ 22. Relators allege that this agreement violated the Federal

Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

1   Acquisition Regulation and the Sherman Antitrust Act, 15 U.S.C. §§ 1–7.  SAC ¶ 23.  This

2   violation allegedly rendered Defendants' claims false because Defendants had made written

3   representations to the United States and California that certified compliance with the Federal

4   Acquisition Regulations and the Sherman Antitrust Act.  *Id.*

5       Third, Relators allege that Defendants "routinely and regularly falsely certified, in

6   writing," that Defendants were in compliance with the Trade Act, 19 U.S.C. §§ 2501–2581.

7   Allegedly, products are only Trade Act compliant if they are made in the United States or one of

8   the designated countries listed in the Code of Federal Regulations, 48 C.F.R. 25.003.  SAC ¶ 25.

9   Russia is not one of the designated countries, which allegedly renders Defendants' representations

10  false.

11  **B.  Procedural History**

12      On February 17, 2015, Relators filed the instant suit in the Northern District of California

13  under seal.  ECF No. 1.  The case was assigned to Magistrate Judge Howard Lloyd.  On April 19,

14  2016, the United States declined to intervene in the instant suit.  ECF No. 5.  On July 29, 2016,

15  California also declined to intervene.  ECF No. 13.

16      On August 5, 2016, the instant suit was unsealed.  On August 10, 2016, Relators filed a

17  first amended complaint ("FAC").  ECF No. 16.

18      On September 14, 2016, Defendant Safran USA declined Magistrate Judge jurisdiction,

19  ECF No. 23, and on September 15, 2016, the instant  suit was reassigned to the undersigned judge,

20  ECF No. 26.

21      On October 14, 2016, Relators voluntarily dismissed former Defendant Morpho U.S., Inc.

22  from the instant suit because it is an entirely separate entity with no involvement with Safran

23  Global or any of the events at issue in the instant case.  ECF No. 30.  Relators stated their intention

24  to add Safran Security (Morpho S.A.) as a defendant in place of Morpho U.S., Inc. in a second

25  amended complaint.

26      On October 19, 2016, a case management conference was held in the instant case.  ECF

27

28  Case No. 15-CV-00746-LHK
    ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
    PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

5

No. 34.  The Court ordered Relators to provide Defendant Safran USA a proposed second amended complaint by October 21, 2016.  ECF No. 36.  The Court set a deadline of October 24, 2016 for Safran USA to stipulate to the filing of the second amended complaint.  *Id.*  On October 25, 2016, Safran USA filed a notice of stipulation to the filing of the second amended complaint, ECF No. 37, and on the same day, Relators filed the currently operative SAC.  ECF No. 38.

On November 8, 2016, Safran USA filed the instant Motion to Dismiss Relators' Second Amended Complaint Pursuant to FRCP 12(b)(1) and 12(b)(6).  ECF No. 45 ("Mot.").  On November 22, 2016, Relators filed an opposition, ECF No. 46 ("Opp'n"), and on November 29, 2016, Safran USA filed a reply, ECF No. 47 ("Reply").

## II.      LEGAL STANDARD

### A.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678.

United States District Court
Northern District of California

1   Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish

2   that he cannot prevail on his . . . claim." *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

3   1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

4   **B.      Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)**

5          A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant

6   to Federal Rule of Civil Procedure 12(b)(1).  A jurisdictional challenge may be facial or factual.

7   *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where the attack is

8   facial, the court determines whether the complaint's allegations are sufficient on their face to

9   invoke federal jurisdiction, and accepts all material allegations as true and construes them in favor

10  of the party asserting jurisdiction.  *See Warth v. Seldin,* 422 U.S. 490, 501 (1975).  Where the

11  attack is factual, "the court need not presume the truthfulness of the plaintiff's allegations." *Safe*

12  *Air,* 373 F.3d at 1039.  In resolving a factual dispute regarding subject matter jurisdiction, a court

13  may review extrinsic evidence beyond the complaint without converting a motion to dismiss into

14  one for summary judgment.  *See id.*; *McCarthy v. United States,* 850 F.2d 558, 560 (9th Cir. 1988)

15  (holding that a court "may review any evidence, such as affidavits and testimony, to resolve

16  factual disputes concerning the existence of jurisdiction").  Once a party has moved to dismiss for

17  lack of subject matter jurisdiction under Rule 12(b)(1), the opposing party bears the burden of

18  establishing the Court's jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S.

19  375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.,* 598 F.3d 1115, 1122 (9th Cir. 2010).

20  **C.      Leave to Amend**

21         Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely

22  granted when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate

23  decision on the merits, rather than on the pleadings or technicalities."  *Lopez v. Smith*, 203 F.3d

24  1122, 1127 (9th Cir. 2000) (en banc) (ellipses omitted).  Generally, leave to amend shall be denied

25  only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be

26  futile, or if the moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512

27

7

28  Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

1  F.3d 522, 532 (9th Cir. 2008).

2  **III.    DISCUSSION**

3       Safran USA makes three arguments in its Motion to Dismiss the SAC.  First, Safran USA

4  argues that Relators have failed to plead a claim with sufficient particularity against Safran USA

5  under Federal Rule of Civil Procedure 9(b).  Second, Safran USA argues that Relators have failed

6  to sufficiently allege scienter under *Twombly*, *Iqbal*, and Federal Rule of Civil Procedure 8(a).

7  Finally, Safran USA argues that Relators fail to state a claim and the Court lacks subject matter

8  jurisdiction because Relators have failed to show that they are the "original source" of the

9  allegations against Safran USA.  The Court finds below that Relators have insufficiently pled their

10 claims under Rule 9(b), and therefore the Court need not reach Safran USA's arguments

11 concerning scienter and the source of Relators' allegations against Safran USA.

12       The Court first discusses the elements of an FCA cause of action, then discusses the

13 pleading standard under Rule 9(b) in the FCA context, and finally discusses whether Relators have

14 satisfied the Rule 9(b) standard.

15       **A.    Elements of an FCA Cause of Action**

16       Relators bring causes of action under five statutory provisions in the FCA and the

17 California FCA: (1) presentation of a false or fraudulent claim under 31 U.S.C. § 3729(a)(1)(A);

18 (2) making or using a false statement material to a false or fraudulent claim under 31 U.S.C.

19 § 3729(a)(1)(B); (3) presentation of a false or fraudulent claim under California Government Code

20 § 12651(a)(1); (4) making or using a false statement material to a false or fraudulent claim under

21 California Government Code § 12651(a)(2); and (5) failure to disclose a false claim after

22 discovering its falsity under California Government Code § 12651(a)(8).

23       The Court first addresses the elements of the first four causes of action and then addresses

24 the elements of the fifth cause of action.

25       **1.    First Four Causes of Action**

26       The first two causes of action are brought under 31 U.S.C. § 3729(a)(1)(A) and (a)(1)(B),

27

28 Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

which prohibit a party from "knowingly present[ing], or caus[ing] to be presented, a false or fraudulent claim for payment or approval," and from making or using "a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(A) & (a)(1)(B). The third and fourth causes of action are brought under the California FCA, pursuant to statutory provisions that are substantially identical to the federal provisions underlying the first two causes of action. Cal. Gov't Code § 12651(a)(1) & (a)(2) (creating liability where a person "[k]nowingly presents or causes to be presented a false or fraudulent claim for payment or approval" or "[k]nowingly makes, uses, or causes to be made or used a false record or statement material to a false or fraudulent claim"). Where, as here, the statutory provisions of the federal FCA and California FCA are the same, courts apply the same analysis to federal and California FCA claims. *Fassberg Const. Co. v. Hous. Auth. of City of L.A.*, 152 Cal. App. 4th 720, 735 (2007) (as modified) (holding that federal case law is used to interpret the California FCA because "[t]he California False Claims Act is patterned after the federal False Claims Act"); *see also Stoner v. Santa Clara Cty. Office of Educ.*, 400 F. App'x 185, 186 (9th Cir. 2010) (finding the issues to be decided in a federal FCA and California FCA case to be identical).

The term "claim" in the FCA context means "any request or demand, whether under a contract or otherwise, for money or property." 31 U.S.C. § 3729(b)(2). The "archetypal" FCA case involves situations where the "claim for payment is itself literally false or fraudulent." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170 (9th Cir. 2006). However, the FCA is "intended to reach all types of fraud, without qualification, that might result in financial loss to the Government." *U.S. v. Neifert–White Co.*, 390 U.S. 228, 232 (1968). Thus, the Ninth Circuit has held that an FCA action can be brought under § 3729(a)(1)(A) or (a)(1)(B) based on either "(1) false certification (either express or implied) [or] (2) promissory fraud." *Hendow*, 461 F.3d at 1171; *S.F. Unified Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc.*, 182 Cal. App. 4th 438, 450 (2010) (as modified) (applying federal false certification theory to California FCA cases). Under a "false certification" theory, a defendant can be held liable under the FCA where the defendant

9

"falsely certifies compliance with a statute or regulation as a condition to government payment." *Hendow*, 461 F.3d at 1171. Under the "promissory fraud" theory, also called the "fraud-in-the-inducement" theory, "liability will attach to each claim submitted to the government under a contract, when the contract or extension of government benefit was originally obtained through false statements or fraudulent conduct." *Id.* at 1173.

Under either theory of liability, the Ninth Circuit has held that the elements are the same. *Id.* The essential elements of FCA liability under § 3729 (a)(1)(A) or (a)(1)(B) are "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *Hendow*, 461 F.3d at 1174. Notably, "the [FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment,'" that is, the fraudulent actions that "cause" the government to make a payment. *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995).

### 2. Fifth Cause of Action

The fifth cause of action is brought under California Government Code § 12651(a)(8). That provision holds that a beneficiary of a claim who "subsequently discovers the falsity of the claim, and fails to disclose the false claim to the state or the political subdivision within a reasonable time after discovery of the false claim" is liable under the California FCA. *Id.* Relators bring this cause of action in case "the finder of fact determines that any [of] Defendants' submission of the above-referenced false claims to the State of California was inadvertent, rather than knowing." SAC ¶ 44. Thus, with the exception of scienter and the timing of a defendant's discovery of the false claim, the elements of a claim under § 12651(a)(8) are identical to the other federal and California FCA provisions. *See E. Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc.*, 2013 WL 6698897, at *2 (N.D. Cal. Dec. 19, 2013) (analyzing claim under § 12651(a)(8) identically to claims under § 12651(a)(1) and (a)(2) for the purposes of Rule 9(b)). Accordingly, because the Court, below, solely addresses allegations not involving scienter or the

10

1   "later discovery" of a false claim, the Court applies the same analysis to Relators' fifth cause of

2   action as to the first four causes of action.  *See Hendow*, 461 F.3d at 1174 (requiring allegation of

3   "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was

4   material, causing (4) the government to pay out money or forfeit moneys due.").

5       The question then is whether Relators have pled with sufficient particularity "facts

6   satisfying all four of the[] elements" of FCA liability as described in *Hendow*.  The Ninth Circuit

7   has held "that complaints brought under the FCA must fulfill the requirements of [Federal Rule of

8   Civil Procedure] 9(b)—defendants accused of defrauding the federal government have the same

9   protections as defendants sued for fraud in other contexts." *Bly-Magee v. California*, 236 F.3d

10  1014, 1018 (9th Cir. 2001).  Rule 9(b) also applies to claims under the California FCA brought in

11  federal court.  *United States v. Todd Spencer M.D. Med. Grp.*, 2016 WL 7229135, at *4 (E.D. Cal.

12  Dec. 14, 2016) (applying Rule 9(b) to California FCA claims).

13      The Court next turns to the requirements of Rule 9(b) in the FCA context and then

14  addresses whether Relators have pled with particularity the elements of an FCA cause of action

15  under Rule 9(b).

16      **B.      The Rule 9(b) Standard in FCA Cases**

17      Claims sounding in fraud, including claims under the FCA, are subject to the heightened

18  pleading requirements of Federal Rule of Civil Procedure 9(b).  *Bly-Magee*, 236 F.3d at 1018.

19  Under the federal rules, a plaintiff alleging fraud "must state with particularity the circumstances

20  constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this standard, the allegations must be

21  "specific enough to give defendants notice of the particular misconduct which is alleged to

22  constitute the fraud charged so that they can defend against the charge and not just deny that they

23  have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).  Thus,

24  claims sounding in fraud must allege "an account of the time, place, and specific content of the

25  false representations as well as the identities of the parties to the misrepresentations." *Swartz v.*

26  *KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  In other words, "[a]verments of fraud must be

27

28
Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003) (citation omitted).  When there are multiple defendants in a case, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz*, 476 F.3d at 764–65 (citation omitted).[3]

Although a certain level of detail is required, the Ninth Circuit has specified that a complaint need not allege "a precise time frame," "describe in detail a single specific transaction" or identify the "precise method" used to carry out the fraud.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  Accordingly, in the FCA context, a plaintiff need not "identify representative examples of false claims to support every allegation."  *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010).  Regardless, the Ninth Circuit has specified that the requirements of Rule 9(b)—the who, what, where, when, and how—have not been relaxed when analyzing claims made pursuant to the FCA.  *Id.* at 999 ("[The Plaintiff] argues that the traditional pleading standards for fraud under Rule 9(b) should be relaxed here . . . .  We are not persuaded.").[4]  Accordingly, an FCA plaintiff must allege, at the very least, "'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that [false] claims were actually

---

[3] The heightened pleading requirement of Rule 9(b) does not apply to allegations regarding the defendant's state of mind.  Thus, knowledge and intent need only be alleged generally to state a valid claim.  *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

[4] Relators argue that Rule 9(b) is "relaxed" in the FCA context.  In support of this contention, Relators cite to one unpublished Ninth Circuit decision, *United States ex rel. Driscoll v. Spencer*, __F. App'x __, 2016 WL 4191896 (9th Cir. Aug. 9, 2016).  In *Driscoll*, the Ninth Circuit overturned the district court's dismissal of a first amended complaint with prejudice because the Relator had pled certain details of the fraudulent scheme with particularity by citing specific examples of fraudulent activity.  *Id.* at *1.  Outside of those specific examples, however, the Ninth Circuit held that Relators had made multiple allegations that were not sufficiently specific.  *Id.* The Ninth Circuit "remand[ed] with instructions to allow Relator another opportunity to amend the complaint to address these deficiencies and to narrow the scope of the complaint so that the litigation will be manageable."  *Driscoll*, 2016 WL 4191896 at *1.  At most, *Driscoll* stands for the principle that pleading specific acts of fraud, while not always necessary, are sufficient to state a cause of action under the FCA.  This holding does not represent a "relaxation" of the pleading standard for an FCA cause of action.

12

Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

submitted.'" *Id.* (citation omitted).  Specific representative examples of false claims are one, but not the only way, to satisfy Rule 9(b) in the FCA context.  *Id.*

### C.    Sufficiency of Relators' Allegations under Rule 9(b)

The Court next turns to whether Relators here have sufficiently alleged an FCA claim against Safran USA.  As discussed above, plaintiff must plead "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due."  *Hendow*, 461 F.3d at 1174 (9th Cir. 2006).  With the exception of element 2, scienter, these elements must be pled with particularity under Rule 9(b).

As discussed in the factual section above, Relators allege that Safran Global generally "does business in the State of California and elsewhere in the United States both as [Safran USA] . . . and as [Safran Security]."  SAC ¶ 10.  With respect to the specific fingerprint identification product sales at issue in the instant suit, Relators allege that these sales are rendered "false claims" in three ways.  First, Relators allege that "Defendants falsely claimed that the technology used in such [Safran Security] fingerprint identification technology was, and is, *French* technology, when in fact it was prohibited *Russian* technology."  *Id.* ¶ 15.  Second, Relators allege that "Defendants, via Defendants' personnel handling government sales, routinely and regularly falsely certified, in writing, to purchasing entities of the United States and to purchasing entities of the State of California" that "Defendants were . . . in compliance with the [Trade Act]."  *Id.* ¶ 25.  Relators do not specifically state that Defendants were not in compliance with the Trade Act, but state that products from Russia are not Trade Act compliant.  *Id.*  Third, Relators allege that Defendants had made "written representations . . . certifying compliance with the 'full and open competition' requirement of the Federal Acquisition Regulation and the Sherman Antitrust Act.  *Id.* ¶ 23.  Relators allege that, in contravention to their written representations, Defendants had entered into an agreement with Papillon to split up the world market for fingerprint identification products in violation of these antitrust laws and regulations.  *Id.*  Relators do not indicate when the above three fraudulent actions occurred, but state that

Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    "[o]ver the last eight years, Defendants' surreptitious sales of such Russian technology to federal,

2    state, and local government entities within the United States were in excess of $1 billion." *Id.*

3    ¶ 26.

4         Relators' allegations fall short of the requirements of Rule 9(b) with respect to Safran USA

5    in a number of ways. First, the Court discusses whether Relators make adequate factual

6    allegations connecting Safran USA to the alleged fraudulent conduct and whether the SAC

7    impermissibly lumps together the allegations against the three Defendants. Second, the Court

8    discusses whether Relators have, more generally, alleged sufficient details of the fraudulent

9    activities at issue—the "who, what, where, when, and how"—under Rule 9(b). *Vess*, 317 F. 3d at

10   1106.

### 1.        The Allegations Against Safran USA and Impermissible Lumping

12        The Court first discusses whether adequate factual allegations have been made to connect

13   Safran USA to the fraudulent conduct at issue in the instant suit and whether the allegations

14   against Safran USA have been impermissibly lumped with those against the other Defendants.

15   Even if an FCA claim is adequately alleged, a complaint must provide an adequate factual basis

16   connecting that FCA claim to the particular defendant. *United States ex rel. Swoben v. United*

17   *Healthcare Insurance Co.*, __F.3d __, 2016 WL 7378731 (9th Cir. Aug. 10, 2016) (as amended)

18   (finding that, even though some details were provided of a fraudulent scheme, there were

19   insufficient facts connecting some defendants to those fraudulent actions).

20        Here, the SAC contains only one paragraph that specifically addresses Safran USA. In that

21   paragraph, Relators allege that Safran Global does business as Safran USA and Safran Security in

22   the United States and in California. SAC ¶ 10. Relators also allege that Safran USA has operated

23   in the United States for 40 years and has a United States customer base that includes the federal

24   government. *Id.* Allegedly, Safran USA has expanded by 50% over the last ten years and [is]

25   comprise[d] [of] 30 companies and joint ventures, with 58 locations across 22 states. *Id.*

26        Other than the above allegations directed specifically at Safran USA, the rest of the SAC

27

28

14

United States District Court
Northern District of California

refers to the three Defendants collectively.  Relators allege that "Defendants" sold the fingerprint identification products to the United States and California, that "Defendants" falsely represented the products to be from France rather than from Russia, and that "Defendants" falsely certified compliance with the Trade Act and federal antitrust laws. *Id.* ¶¶ 10–25.  Thus, aside from the collective allegations, there are no allegations in the SAC that specifically link Safran USA to the alleged fraudulent actions or the sale of the fingerprint identification products.

These collective allegations are insufficient to satisfy Rule 9(b) because they impermissibly lump the three Defendants together.  Rule 9(b) "require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz*, 476 F.3d at 764–65 (citation and internal quotation marks omitted).  Here, the generalized allegations made against the three "Defendants" rather than against Safran USA specifically make it impossible to "discern[] which entity . .  is [making the false representations and certifications] and which is selling the products." *U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Prod., Inc.*, 2013 WL 774177, at *4–5 (S.D. Cal. Feb. 28, 2013); *see also Gonzalez v. Planned Parenthood of L.A.*, 2011 WL 1481398, at *8 (C.D. Cal. Apr. 19, 2011) ("As the FAC stands, it merely alleges "defendants" as a whole engaged in particular behavior, and is deficient in that respect.").  Thus, the lack of any allegations regarding the sale of fingerprint identification products or false representations against Safran USA specifically and the lumping of Defendants warrants dismissal.

In response, Relators make four arguments. First, Relators argue that Safran Global owns 97.5% of Safran USA, which would somehow indicate that the Defendants in this case are essentially the same entities.  However, "[t]he mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law." *Katzir's Floor and Home Design, Inc. v. M–MLS.com*, 394 F.3d 1143, 1149 (9th Cir. 2004) (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003)).  Thus, multiple courts have held that FCA claims cannot be imputed from one party to the other based purely on a

Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1   parent-subsidiary relationship.  *See, e.g.*, *Pecanic*, 2013 WL 774177 at *4–5 ("Relator's

2   allegations that [one defendant] is a wholly-owned subsidiary and that [the subsidiary defendant]

3   was at all times subject to [the parent company defendant's] control with respect to these products

4   is insufficient to support alternatively treating the two corporate entities as one."); *see also U.S. ex*

5   *rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59-60 (D.D.C. 2007)

6   (holding that a parent corporation is not liable for its subsidiary's FCA violation).

7           Second, Relators argue that they allege that Safran USA "does business as" Safran Global.

8   Opp'n at 9.  Relators allege that Safran Global "does business in the State of California and

9   elsewhere in the United States both as Safran U.S.A., Inc. . . . and as [Safran Security]."  SAC

10  ¶ 10.  However, this allegation still does not specify Safran USA's role in the alleged fraud at

11  issue, but speaks generally about Safran USA's operations in the United States.  There is no

12  allegation that Safran USA was "doing business as" Safran Global for the particular transactions at

13  issue, the sale of fingerprint identification products.  Moreover, the phrase "doing business as" is

14  ambiguous.  It is unclear whether Safran USA is allegedly the alter-ego of Safran Global,

15  eliminating the separate corporate identity of Safran USA, whether Safran USA operates as Safran

16  Global's agent for United States business dealings, or whether the allegation simply reflects that

17  Safran USA is a subsidiary of Safran Global.  *See Pecanic*, 2013 WL 774177 at *4–5 (holding that

18  if one corporations were to be held responsible for the actions of the other in an FCA case, the

19  relator would need to adequately allege an alter-ego theory).

20          Third, Relators argue that they allege that all of the Defendants engaged in all of the

21  actions underlying the FCA claim.  Opp'n at 9.  However, this argument is in tension with

22  Relators' argument that Safran USA was acting as the agent or alter-ego of Safran Security and

23  Safran Global.  Either Safran USA was acting as the alter ego or as the agent of the other entities,

24  or each Defendant individually entered contracts with the United States and California, made false

25  representations and certifications, and sold the products.  From the SAC it is impossible to

26  determine which is true, and the role of each Defendant in those transactions.  Without

27

28  Case No. 15-CV-00746-LHK
    ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
    PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

1    clarification on this issue, the SAC fails to "inform each defendant separately of the allegations

2    surrounding his alleged participation in the fraud.'"   *Swartz*, 476 F.3d at 764–65 (citation omitted).

3            Finally, Relators argue that the business dealings and corporate structure of Defendants are

4    "like an onion" or like "babushka dolls."  However, the complicated nature of Safran Global's

5    corporate structure does not excuse the requirements of Rule 9(b).  In *Ebeid*, the Ninth Circuit

6    refused to relax the requirements of Rule 9(b) even though the evidence may have been in "a

7    defendant's exclusive possession."  *Ebeid*, 616 F.3d at 999.  The Ninth Circuit noted that "the

8    FCA is geared primarily to encourage insiders to disclose information necessary to prevent fraud

9    on the government."  *Id.*  Thus, it is unclear why the complicated corporate structure of

10   Defendants would require altering the Rule 9(b) standard, especially when Relators allege that

11   they are insiders who had high positions in Defendants and related entities.  *See* SAC ¶¶ 6–7

12   (alleging that Relator Desbois was the CFO of Safran Global's Russian branch and CEO of Safran

13   Security's Russian branch and the Hascoet was the Deputy Director of PowerJet, a company

14   related to Snecma, Safran Global's subsidiary).

15           The lack of specific allegations against Safran USA and the impermissible lumping of

16   Safran USA with the other Defendants warrants dismissal in this case.

17                   **2.       Whether "Particular Details" Have Been Alleged**

18           The Court next turns to whether Relators have adequately alleged "particular details of a

19   scheme to submit false claims" even if facts were alleged that connected Safran USA to the

20   allegedly fraudulent claims.  *Ebeid*, 616 F.3d at 998.  Such allegations must provide sufficient

21   details of the "who, what, where, when, and how" of the allegedly fraudulent activity.  *Vess*, 317

22   F. 3d at 1106.  As noted above, the purpose of Rule 9(b) is to ensure that Defendants have notice

23   of "the particular misconduct which is alleged to constitute the fraud charged so that they can

24   defend against the charge and not just deny that they have done anything wrong."  *Neubronner*, 6

25   F.3d at 671 (citation omitted).

26           As discussed above, the "false claims" in this case allegedly arise from misrepresentations

27                                                        17

28   Case No. 15-CV-00746-LHK
     ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
     PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

surrounding the sale of "fingerprint identification products."  Thus, the court addresses whether Relators have sufficiently alleged the circumstances surrounding the misrepresentations, the sale of the "fingerprint identification products," and the causal connection between the misrepresentations and the sale of the products.  *See Hendow*, 461 F.3d at 1174 (requiring specific allegations of fraudulent activity and a causal connection to the payment of money by the government).  The Court first discusses the allegations that misrepresentations were made, then discusses the allegations surrounding the sale of the fingerprint identification products, and finally discusses whether Relators have sufficiently alleged a connection between the alleged misrepresentations and the sale of the fingerprint identification products.

### i.      The Misrepresentations

With respect to Defendants' alleged misrepresentations, the Court first addresses whether Relators have adequately alleged who made the misrepresentations, then discusses whether Relators have sufficiently alleged when the misrepresentations were made, then discusses whether Relators have sufficiently alleged where the misrepresentations were made, and finally discusses whether Relators have sufficiently alleged how the misrepresentations were made.

With respect to "who" made the allegedly false representations, Rule 9(b) requires that the plaintiff allege the individual that has made the misrepresentation.  "Where fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim, or at a minimum identify them by title and/or job responsibility."  *U.S. ex rel. Modglin v. DJO Glob. Inc.*, 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015).

Here, Relators do not indicate in the SAC who made the statements at issue for any of the three misrepresentations that form the bases of the FCA claim.  First, with respect to the representation that the technology was French rather than Russian technology, Relators solely allege that "Defendants falsely claimed that the technology used in such [Safran Security] fingerprint identification technology was, and is, *French* technology."  SAC ¶ 15.  This allegation

18

not only lumps the three Defendants together, as discussed above, but also fails to identify who

represented that the technology was French, rather than Russian, technology.  Similarly, with

respect to the allegedly false certification that Defendants did not comply with antitrust laws and

regulations, Relators solely allege that compliance was certified through "written representations

by Defendants."  *Id.* ¶ 23.  The SAC contains no allegations regarding who made these

representations.

   With respect to who made the false certifications pertaining to the Trade Act, Relators

solely allege that "Defendants, via Defendants' personnel handling government sales, routinely

and regularly falsely certified" that Defendants were in compliance with the Trade Act.  *Id.* ¶ 25.

Although this allegation contains more detail about the individual's "job responsibility," the

allegation still lumps "Defendants" together.  The allegation also refers to "personnel" in plural,

without identifying any particular individual or job title as required in *Modglin*.  Thus, Relators

have inadequately alleged who made the allegedly false representations.

   With respect to when the misrepresentations were made, the sole allegation regarding a

time frame is that "[o]ver the last eight years, Defendants' [made] surreptitious sales of [] Russian

technology to federal, state, and local government entities within the United States [] in excess of

$1 billion."  *Id.* ¶ 23.  In *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868 (N.D. Cal. 2015), this

Court found allegations of fraud to not satisfy Rule 9(b) partly because the Plaintiff did not

provide sufficient detail on when the alleged misrepresentations were made.  *Id.* at 887–88 (citing

*Neubronner*, 6 F.3d at 672 ("The complaint must specify such facts as the times, dates, places,

benefits received, and other details of the alleged fraudulent activity.").  There, this Court found

plaintiff's allegations that the fraudulent misrepresentations occurred "in 2011 and 2012" and "in

approximately 2008" to be insufficient.  *Id.* at 888; *see also Glen Holly Entm't, Inc. v. Tektronix,

Inc.*, 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999) ("[A]llegations such as '[d]uring the course of

discussions in 1986 and 1987,' and 'in or about May through December 1987' do not make the

grade under Rule 9(b)").

Case No. 15-CV-00746-LHK
ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

United States District Court
Northern District of California

1   Here, Relators do not identify when the alleged false representations occurred at all, but

2   solely allege that the fingerprint identification technology was sold over the last eight years.  SAC

3   ¶ 23.  This complete lack of information on when the misrepresentations (as opposed to sales)

4   occurred is insufficient under Rule 9(b).  Additionally, even if the Court were to find that Relators

5   alleged that the misrepresentations occurred in an eight-year period, such a time frame would not

6   satisfy Rule 9(b).  *Ryan*, 147 F. Supp. 3d at 888 (finding an approximation of years to be

7   insufficient).  Additionally, the allegation regarding the "when" involves sales to "federal, state,

8   and local government entities within the United States;" does not specify whether sales were made

9   to the United States or California specifically in that time frame; and does not identify when false

10   representations were made.  SAC ¶ 23.  Thus, the SAC's allegations provide insufficient

11   information concerning the time of the alleged misrepresentations.  *See Modglin*, 114 F. Supp. 3d

12   at 1017 ("Although a plaintiff can plead a reasonable range of dates under Rule 9(b), relators do

13   not provide even a range of time during which the promotional statements were purportedly

14   made.").

15   The Court next addresses whether Relators have adequately alleged "where" the

16   misrepresentations were made.  Under the "where" requirement, Rule 9(b) requires an allegation

17   of the context of the false representations.  *See Schreiber Distributing Co. v. Serv–Well Furniture*

18   *Co., Inc.*, 806 F.2d 1393, 1400–01 (9th Cir. 1986) (holding that Rule 9(b) requires the plaintiff to

19   "state with particularity" the "circumstances constituting the fraud," including a statement of "the

20   time, place, and specific content of the false representations as well as the identities of the parties

21   to the misrepresentation.").  With respect to the allegedly false claim that the technology was

22   French, Relators vaguely allude to the statement occurring as part of the sale of fingerprint

23   identification technology, SAC ¶ 14 (noting that representations were made "[i]ncident to

24   Defendants' sale of Morpho fingerprint identification products to the United States . . . [and]

25   California"), but the SAC does not state in what documents or context the alleged

26   misrepresentations were made.  The SAC fails to allege whether the misrepresentations were

27

28   Case No. 15-CV-00746-LHK
     ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
     PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

20

integrated into the contract for sale, were made separately by letter or by email, or were made as part of conversations among representatives of the parties.  Moreover, Plaintiffs have failed to allege "how" the representations were made.

Without information concerning who made the allegedly false statements, when those statements were made, where those statements were made, and how those statements were made, there is insufficient notice of the "particular misconduct which is alleged to constitute the fraud charged."  *Semegen*, 780 F.2d at 731.  Thus, Relators have failed to satisfy Rule 9(b) with respect to the allegedly false representations.

### iii.   The Sale of the Fingerprint Identification Products

The "false claims" in this case are allegedly "false" due to the misrepresentations discussed above.  However, the "claim" at issue, the request for payment, was only made as part of the sale of the fingerprint identification products.  Thus, Relators must allege the circumstances of these sales with specificity.  As with the misrepresentations themselves, Relators provide insufficient information concerning who the sales were made to and when the sales were made.

With respect to "who" the fingerprint identification products were sold to, Relators allege the following:

> Incident to Defendants' sale of [Safran Security] fingerprint identification products to the United States and to individual states and other government entities within the United States, including, but not limited to the State of California, the U.S. Federal Bureau of Investigation ("FBI") was, and is, in charge of centralizing all fingerprints on behalf of all other government entities in the U.S., and therefore was, and is, the unique client of [Safran Security].

SAC ¶ 14.  From this allegation, the SAC is unclear what government agency was actually a party to the contracts with Defendants.  This allegation could be read in one of two ways.  Either the United States and California were the actual parties to the contracts at issue and the FBI served as a go-between that "centralized" the fingerprint identification product contracts, or the FBI was the actual party to the purchase of these products as the "unique client" of Safran Security.  Without clarification of to whom exactly the products were sold, that is, who was tricked into accepting Defendants' allegedly false claims, Relators have not alleged with particularity the details of a

21

1    fraudulent scheme.  *See E. Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc.*, 2013 WL

2    6698897, at *4 (N.D. Cal. Dec. 19, 2013) ("To the extent that Qui Tam Plaintiffs intend to assert

3    claims relating to unspecified projects and public entities, those claims are neither plausible nor

4    pleaded with particularity, and any such claims are dismissed.").

5           Additionally, as with the misrepresentations, Relators provide no information about when

6    these sales were made beyond the general allegation that $1 billion in sales was made "over the

7    last 8 years" to multiple governments within the United States.  As discussed above, this is

8    insufficiently specific to satisfy Rule 9(b).  *See Ryan*, 147 F. Supp. 3d at 888 (finding an

9    approximation of years to be insufficient).

10          Thus, Relators have provided insufficient notice of what claims are actually at issue and

11   against whom "false claims" were actually made.  Therefore, Relators have failed to allege facts

12   with sufficient particularity under Rule 9(b).

13                              **iii.     Causation**

14          In addition to alleging that misrepresentations occurred and that a claim for payment was

15   submitted, Relators must also allege that the misrepresentations at issue were material to the

16   decision to pay the claim and caused the payment of the claim.  *See Hendow*, 461 F.3d at 1174

17   (holding that the fraudulent activity must be the material cause of the government's payment of

18   money).

19          Here, for the reasons discussed below, Relators have failed to adequately allege causation

20   and materiality with respect to the two allegedly false certifications of compliance with the Trade

21   Act and antitrust laws and regulations.[5]  With respect to the Trade Act, Relators allege that

22   "Defendants, via Defendants' personnel handling government sales, routinely and regularly falsely

23   certified, in writing, to purchasing entities of the United States and to purchasing entities of the

[5] The false certification allegations contrast with the allegations regarding misrepresentations
concerning the fingerprint identification products' country of origin.  Relators allege that "a
material condition of [the] sale[]" of the fingerprint identification products was that those products
were French technology.  SAC ¶ 14.  Therefore, with respect to that misrepresentation, Relators
have adequately alleged causation and materiality.

22

United States District Court
Northern District of California

1    State of California . . . Defendants were, at all times pertinent herein, were [sic] in compliance

2    with" the Trade Act.  SAC ¶ 25.  Similarly, Relators allege that Defendants made "written

3    representations . . . to the United States and the State of California, certifying compliance with"

4    federal antitrust regulations and laws while violating those laws.  *Id.* ¶ 23.

5             However, these allegations are flawed because they make no connection between the

6    certifications and the purchase of the fingerprint identification products.  *See Folliard*, 930 F.

7    Supp. 2d at 127 (finding a valid FCA claim where the complaint alleged that the contracts

8    "required [Trade Act] compliance").  As noted above, to state an FCA claim a complaint must

9    allege fraudulent activity that is material to the false claim for payment, that is, the fraudulent

10   activity must *cause* the government entity "to pay out money."  *Hendow*, 461 F.3d at 1174.  Here,

11   there is no allegation connecting the false certifications to the contracts for sale of the "fingerprint

12   identification products" at issue in the instant case.  Thus, Relators have insufficiently alleged a

13   connection between the false certifications and the sale of products at issue in the instant suit.

14            As discussed above, Relators have insufficiently alleged Safran USA's role in the alleged

15   fraudulent conduct, the misrepresentations, the sale of the products, and with respect to the false

16   certifications, a causal connection between the misrepresentations and the sale of products.

17   Therefore, the Court GRANTS Safran USA's Motion to Dismiss the SAC.  The Court provides

18   leave to amend because Relators may be able to allege facts to cure the deficiencies in the

19   pleadings.  Safran USA argues that Relators have already failed to adequately amend the pleadings

20   after two attempts.  However, the first of the amendments occurred while the case was still filed

21   under seal and before Safran USA had appeared in the case, and the second of the amendments

22   solely substituted a party that had been incorrectly named in the original complaint and the FAC

23   with the correct party.  Additionally, the instant motion to dismiss is "the first pleading[] to attack

24   the sufficiency of [Relators'] allegations, the current decision[] by . . . this court [is] the first to

25   address the sufficiency of those allegations, and [Relators are] seeking [their] first opportunity to

26   cure those deficiencies."  *Swoben*, 2016 WL 7378731 at *16.  Thus, the Court provides leave to

27

28
     Case No. 15-CV-00746-LHK
     ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
     PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California

1    amend.

2    **IV.    CONCLUSION**

3           For the foregoing reasons, the Court GRANTS Safran USA's Motion to Dismiss the SAC

4    with leave to amend.  Should Relators elect to file an amended complaint curing the deficiencies

5    identified herein, Relators shall do so within twenty-one (21) days of the date of this Order.

6    Failure to meet the twenty-one day deadline to file an amended complaint or failure to cure the

7    deficiencies identified in this Order will result in a dismissal with prejudice of Relators' deficient

8    claims and deficient prayer for damages.  Relators may not add new causes of action or parties

9    without leave of the Court or stipulation of the parties pursuant to Rule 15 of the Federal Rules of

10   Civil Procedure.

11   **IT IS SO ORDERED.**

12

13   Dated: January 19, 2017

14                                                     *Lucy H. Koh*

15                                                     LUCY H. KOH
                                                       United States District Judge
16

17

18

19

20

21

22

23

24

25

26

27
                                                     24
28   Case No. 15-CV-00746-LHK
     ORDER GRANTING SAFRAN USA, INC.'S MOTION TO DISMISS SECOND AMENDED COMPLAINT
     PURSUANT TO FRCP 12(B)(1) AND 12(B)(6) WITH LEAVE TO AMEND

United States District Court
Northern District of California