HOGAN LOVELLS US LLP
Paul B. Salvaty (Bar No. 171507)
Stephanie K. Yonekura (Bar No. 187131)
Poopak Nourafchan (Bar No. 193379)
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone:   (310) 785-4600
Facsimile:    (310) 785-4601
paul.salvaty@hoganlovells.com
stephanie.yonekura@hoganlovells.com
poopak.nourafchan@hoganlovells.com

Attorneys for Defendants
SAFRAN, S.A., SAFRAN IDENTITY &
SECURITY, S.A.S (formerly known as Morpho
SAS), and SAFRAN USA, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF CALIFORNIA, *ex rel.* VINCENT HASCOET and PHILIPPE PACAUD DESBOIS,<br><br>Plaintiffs,<br><br>v.<br><br>MORPHO, S.A., a/k/a SAFRAN IDENTITY & SECURITY, S.A., a French Corporation; SAFRAN, S.A., a/k/a SAFRAN GROUP, S.A.,  a French Corporation; and  SAFRAN U.S.A., INC., a California corporation,<br><br>Defendants. | Case No. 5:15-cv-00746-LHK<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(1) AND 12(B)(6)**<br><br>DATE:    August 24, 2017<br>TIME:     1:30 p.m.<br>CTRM:    8<br><br>[Notice of Motion and Motion, Declarations of Stephane Abrial and Yves Charvin, Request for Judicial Notice and [Proposed] Order Filed Concurrently] |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 3

    A.    Procedural History .................................................................................. 5

III.   LEGAL ARGUMENT ....................................................................................... 8

    A.    The TAC Should Be Dismissed Pursuant To Rules 8(a), 9(b) And 12(b)(6). .................................................................................................. 8

        1.    The TAC Should Be Dismissed Because It Fails To Plead With Particularity That Any False Claims Were Submitted. ...... 9

        2.    Relators Continue To Impermissibly "Lump" All Defendants Together And Fail To Differentiate Their Allegations Against Any Particular Defendant. ....................... 10

        3.    Relators Fail to Allege Particular Details as to the "Who, What, Where, When and How" of the Alleged Scheme. .......... 13

            i.    Relators Fail to Identify *Who* At Defendants Was Involved In Conduct That Allegedly Violated The FCA ............................................................................ 14

            ii.   Relators Fail To Identify *What* Alleged Conduct By The Defendants Violated The False Claims Act ............. 15

            iii.  Relators Fail To Identify *When*, *Where,* and *How* The Defendants' Conduct Allegedly Violated The FCA ....... 18

            iv.   Relators Fail to Specifically Allege the Casual Connection Between the Misrepresentation And the Claim for Payment ...................................................... 19

    B.    Relators Fail to Plead *Scienter* Under Rule 8(a)(2). ........................... 20

    C.    Relators Are Not The Original Source Of Any False Claim Allegations Relating to Defendants. .................................................... 21

        1.    Relators' Allegations Against Defendants Have Been Publicly Disclosed on Safran or Government Websites. .......... 22

        2.    Relators Did Not Played Any Part in the Public Disclosure at Issue and Have No "Independent Knowledge". .................... 24

IV.    CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A-1 Ambulance Serv., Inc. v. California*,
202 F.3d 1238 (9th Cir. 2000) ............................................................................ 22

*U.S. ex rel. Aflatooni v. Kitsap Physicians Serv.*,
314 F.3d 995 (9th Cir. 2002) ..................................................................... 15, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................... 8, 9, 21

*In re Bank of NY Mellon Corp. False Claims Act Foreign Exch. Litig.*,
851 F. Supp. 2d 1190 (N.D. Cal. 2012) ................................................................ 1

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................... 8, 9, 21

*U.S. ex rel. Biddle v. Bd. of Trs. of Leland Stanford, Jr. Univ.*,
161 F.3d 533 (9th Cir. 1998) ............................................................................ 22

*Bly-Magee v. Califor*nia,
236 F. 3d 1014 (9th Cir. 2001) ................................................................ 7, 9, 10

*U.S. ex rel. Brown v. Walt Disney World Co.*,
No. 6:06-cv-1943-Orl-22KRS, 2008 WL 2561975 (M.D. Fla. June
24, 2008), *aff'd*, 361 F. App'x. 66 (11th Cir. 2010) ........................................ 22

*U.S. ex rel.Cafasso v. General Dynamics C4 Systems, Inc.*,
637 F.3d 1047 (9th Cir. 2011) ................................................................... 10, 15

*U.S. ex rel. Clausen v. Lab. Corp. of Am.*,
290 F.3d 1301 (11th Cir. 2002) ........................................................................ 19

*U.S. ex rel. Devlin v. California*,
84 F.3d 358 (9th Cir. 1996) .............................................................................. 25

*E. Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc.*,
2013 WL 6698897 (N.D. Cal. Dec. 19, 2013) ................................................... 19

*U.S. ex rel. Ebeid v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) ......................................................... 8, 10, 13, 15

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- ii -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

*Fayer v. Vaughn*,
   49 F. 3d 1061 (9th Cir. 2011) ................................................................ 9

*Flowers v. Wells Fargo Bank, N.A.*,
   No. C 11–1315 PJH, 2011 WL 2748650 (N.D. Cal. July 13, 2011)................... 15

*Glen Holly Entm't, Inc. v. Tektronix, Inc.*,
   100 F. Supp. 2d 1086 (C.D. Cal. 1999)....................................... 14, 18

*U.S. ex rel. Green v. Serv. Contract Educ. & Training Tr. Fund*,
   843 F. Supp. 2d 20 (D.D.C. 2012) .................................................. 22

*U.S. ex rel. Hendow v. Univ. of Phoenix*,
   461 F. 3d 116 (9th Cir. 2006).......................................................... 9, 20

*U.S. ex rel. Hockett v. Columbia/HCA Healthcare Corp.*,
   498 F. Supp. 2d 25 (D.D.C. 2007) ................................................... 16

*U.S. ex rel. Hoggett v. Univ. of Phx*,
   No. 2:10-cv-02478-MCE-KJ, 2014 WL 3689764 (E.D. Cal. July
   24, 2014)....................................................................... 3, 21, 25

*U.S. ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ......................................................... 11

*U.S. ex rel. Lee v. SmithKline Beecham, Inc.*,
   245 F.3d 1048 (9th Cir. 2001) ....................................................... 15

*Malhotra v. Steinberg*,
   770 F.3d 853 (9th Cir. 2014) ......................................................... 21

*U.S. ex rel. Modglin v. DJO Glob. Inc.*,
   114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015)........................... 14, 15, 18

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993) ....................................................... 10, 13

*Parrino v. FHP, Inc.*
   146 F. 3d 699 (9th Cir. 1998) ....................................................... 22

*U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods., Inc.*,
   No. 12-cv-0602-L (NLS), 2013 WL 774177 (S.D. Cal. Feb. 28, 2013).......11, 16

*Stanislaus Food Prods. Co. v. USS-POSCO Indus.*,
   782 F. Supp. 2d 1059 (E.D. Cal. 2011) .......................................... 2

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- iii -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

*Swartz v. KPMG LLP*,
   476 F. 3d 756 (9th Cir. 2007) ........................................................................... 10, 11

*U.S. v. Alcan Elec. & Eng'g, Inc.*,
   197 F.3d 1014 (9th Cir. 1999) ............................................................................. 3, 24

*U.S. v. ex rel. Cericola v. Fed. Nat'l Mortg. Assoc.*,
   529 F. Supp. 2d 1139 (C.D. Cal. 2007) ................................................................... 10

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
   718 F.3d 1006 (9th Cir. 2013) .................................................................................... 9

*U.S. ex rel. Unite Here v. Cintas Corp.*,
   C 06-2413 PJH, 2007 WL 4557788 (N.D. Cal. Dec. 21, 2007) ......................... 22

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ....................................................................................................... 11

*United States v. Rivera*,
   55 F.3d 703 (1st Cir. 1995) ........................................................................................ 15

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ....................................................................................... 9

*Vess v. Ciba-Geigy Corp. USA*,
   317 F. 3d 1097 (9th Cir. 2003) .......................................................................... 10, 13

*U.S. ex. rel. Yagman v. Mitchell*,
   No. CV 14-9771 DMG, 2016 WL 857301 (C.D. Cal. Mar. 4, 2016) ................. 21

**Statutes**

19 U.S.C. § 2501 *et seq.* ..................................................................................................... 4

28 U.S.C. 3730(e)(4)(B) ................................................................................................. 24

31 U.S.C.
   § 3729(a)(1)(A)-(C) ................................................................................................ 8, 9
   § 3730(e) .......................................................................................................................... 21
   § 3730(e)(4)(A) .................................................................................................... 21, 22
   § 3730(e)(4)(B) ....................................................................................................... 2, 24

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

1

2

**Other Authorities**

3

Federal Rules of Civil Procedure

    Rule 8(a) .............................................................................. 2, 8, 20, 21
    Rule 8(a)(2) .................................................................................. 8, 20
    Rule 9(b) ..................................................................................*passim*
    Rule 12(b)(1) .......................................................................... 2, 6, 21
    Rule 12(b)(6) ...................................................................... 2, 6, 8, 9

78 Fed. Reg. 75362 (Dec. 11, 2013) ........................................................ 17

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

– v –

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

## I.   **INTRODUCTION**

Relators Vincent Hascoet and Philippe Pacaud Debois's (collectively, "Relators") claims against defendants Safran, S.A. ("Safran") (erroneously identified as "Safran Group, S.A."), Safran Identity & Security, S.A.S. (formerly known as "Morpho, S.A.S.") ("Safran SIS"), and Safran U.S.A., Inc., ("Safran USA"), (collectively, "Defendants") fall woefully short of the requirements of the False Claims Act ("FCA")[1], necessitating the dismissal *with prejudice* of the operative Third Amended Complaint ("TAC").

Failing to heed the Court's Order Granting Safran USA, Inc.'s Motion to Dismiss Second Amended Complaint (Dkt. #54), the TAC suffers from the exact same defects as Relators' three prior complaints, namely: (1) Relators continue to "impermissibly lump" all Defendants together (*id.* at 14), (2) Relators fail to allege any facts specifying the role of any Defendant in any alleged fraud (*id.* at 15); and (3) Relators continue to rely on the Defendants' allegedly complicated corporate structure to excuse their pleading shortcomings (*id.* at 17). Moreover, Relators continue to rely exclusively on publicly-available information, rather than any information for which they could claim to be an "original source," to support their claims. These defects in the TAC warrant dismissal, this time with prejudice and without leave to amend, for three reasons:

***First, Relators' allegations still lack the particularity required by Rule 9(b).*** Relators fail again to specify the details of any Defendant's role in any alleged FCA violation. Instead of pleading fraud with particularity, Relators again make generalized allegations against all Defendants, again lump them together and treat them as a single mass, and again fail to plead any specific facts suggesting that any Defendant did anything wrong. Like the three prior complaints, the TAC fails to

---

[1]   Relators also assert claims based on the California False Claims Act ("CFCA"). The CFCA was drafted to match the FCA. *In re Bank of NY Mellon Corp. False Claims Act Foreign Exch. Litig.*, 851 F. Supp. 2d 1190, 1195 (N.D. Cal. 2012). For that reason, we evaluate the claims together and reference the FCA when discussing all claims.

state ***what*** fraudulent conduct allegedly was committed by any Defendant, fails to state ***who*** perpetrated the fraud on any Defendant's behalf, and fails to explain ***when***, ***where*** or ***how*** the purported fraud on the government occurred. The total absence of specificity in the TAC violates both Rule 9(b) and the directives of this Court. (Dkt. #54 at 13-24).

***Second, Relators fail to plausibly establish scienter under Rule 8(a).*** Relators again allege no facts to suggest that any individual employed by any Defendant had actual knowledge of false information and deliberately ignored (or recklessly disregarded) the truth or falsity of that information as part of any submission to the government, as required by Rule 8(a).

***Third, Relators are not the "original sources" of any allegations of wrongdoing against Defendants.*** Relators again assert that they are "insider 'original sources' as that term is used in the context of the Federal False Claims Act" and that they "had direct, firsthand, and independent knowledge and information on which the allegations of false claims herein are based, and they obtained such knowledge entirely through their own labors and their jobs with entities of Safran S.A." TAC ¶ 5.  But, as with their prior pleadings, Relators' allegations are taken directly from publicly-available websites and industry materials.[2]  Because Relators' claims are based on public information, the claims are barred unless Relators can prove that they qualify as "original sources."  Despite multiple chances to make this showing, Relators again fail to prove that they have "knowledge that is ***independent of and materially adds to*** the publicly disclosed" information or that they provided their information to the government "prior to a public disclosure."  31 U.S.C. § 3730(e)(4)(B) (emphasis added).  Relators' failure to qualify as "original sources" provides an independent basis for dismissing their FCA claims under Rules 12(b)(1)

---

[2] Although Relators have removed references to Defendants' websites from the TAC, the allegations are the same as they were in the prior pleading. *Cf.* SAC ¶ 9; TAC ¶ 10. The Court may consider the prior allegations in deciding this motion to dismiss. *See Stanislaus Food Prods. Co. v. USS-POSCO Indus.*, 782 F. Supp. 2d 1059, 1075 (E.D. Cal. 2011) ("The court does not ignore the prior allegations in determining the plausibility of the current pleadings.") (citation omitted).

and 12(b)(6).[3]  *See U.S. ex rel. Hoggett v. Univ. of Phx,* No. 2:10-cv-02478-MCE-KJ, 2014 WL 3689764, at *10-11 (E.D. Cal. July 24, 2014); *see also U.S. v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1020 (9th Cir. 1999).

## II.  BACKGROUND

The Court is, by now, familiar with the background of this case.  Relators allege that the Defendants, along with various non-party subsidiaries and affiliates, made both express and implied false certifications to the United States, the State of California, and other government entities in the United States regarding the country of origin of unnamed fingerprint and palmprint identification technology.  TAC ¶ 2. Relators further allege that Defendants and non-parties misrepresented their compliance with applicable laws prohibiting agreements in restraint of trade.  TAC ¶ 2.

The TAC alleges that Relators, both of whom are French citizens but reside in the Russian Federation, held "high–level" positions within the Safran organizations. TAC ¶¶ 4, 6, 7.  Relator Philippe Desbois is alleged to have been a "high level employee of Safran, S.A., a/k/a Safran Group, S.A., for seven years, from November 2007, to September 2014" in the Aerospace, Defense, Security Division. TAC ¶ 6. The TAC further alleges that Desbois was the Chief Executive Officer of non-party Morpho Russia and that in that capacity, he received documentation and oral reports "reflecting the source and marketing of technology for Defendants' fingerprint identification products."  *Id.*  With respect to Relator Vincent Hascoet, the TAC alleges that he was Deputy Director of the Russian branch of yet another non-party, PowerJet, in Moscow, Russia. TAC ¶ 7.  Non-party PowerJet is alleged to have been a joint venture between two other non-parties, Snecma and NPO Saturn.  *Id.* Relators never allege that they or the companies they worked for were responsible for developing or selling any automated fingerprint identification system ("AFIS")

---

[3] In evaluating a factual attack to jurisdiction under Rule 12(b)(1) the Court may consider extrinsic evidence.  *See Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (party may present affidavits or other evidence).

products or otherwise had any direct connection to any business dealings in the United States.  In fact, neither Relator is alleged to have engaged in any work in the United States on behalf of Defendants or to have personal knowledge of any business dealings by Defendants in the United States.

Relators' FCA claims are based largely upon generic references to a Technology License Agreement ("Sagem-Papillon Agreement") between two foreign entities, Sagem Securite SA ("Sagem") and Papillon ZAO ("Papillon"), entered into on or around July 2, 2008.  TAC ¶ 18.  Relators allege that the Sagem-Papillon Agreement grants Sagem the right to develop and integrate Papillon technology into its own products.  TAC ¶ 21.  But the connection between Relators' FCA claims and the Sagem-Papillon Agreement remains speculative at best. According to Relators, Frank Barret, a project manager at Safran SIS received and incorporated five Papillon algorithms into an unnamed AFIS product sometime between 2007 and 2010.  TAC ¶ 19.  Barret allegedly started working at a non-party subsidiary company on an unspecified date, and allegedly "participated in the sale of such AFIS products," apparently by unidentified employees at a different company, to unspecified "U.S. agencies and California agencies."  TAC ¶ 19.

Even though no Defendant is alleged to have been a party to the sale of any AFIS product to any U.S. government entity, Relators allege that, in the course of obtaining government contracts, "top management" from the Defendants "kept secret from representatives of the United States and the State of California the Russian origin of the subject fingerprint identification algorithms, and perpetuated the falsehood that the subject Russian technology was French technology developed and owned by Safran."  TAC ¶ 19.

The TAC alleges that non-parties Morpho Trak, LLC ("MorphoTrak") and MorphoTrust, USA, LLC ("MorphoTrust") (entities that Relators unsuccessfully tried to add as defendants "in name only," Dkt. #78), entered into contracts with Lockheed Martin and the Department of Justice, respectively, for fingerprint

1  identification products.  TAC ¶¶ 23-29.  The allegations concerning these contracts

2  include a hodgepodge of assertions, pulled directly from public sources, that have

3  no direct connection to any Defendant.  They include no facts to connect any named

4  Defendant to any fraudulent statement, claim for payment, or even to a government

5  contract. *Id.*

6        Furthermore, Relators allege that during negotiations with the U.S.

7  government, Defendants falsely claimed to be in compliance with all "applicable

8  laws" of the United States, including the Sherman Antitrust Act and the Trade

9  Agreements Act of 1979 ("TAA"), 19 U.S.C. § 2501 *et seq*.  TAC ¶¶ 2, 32, 34.

10  Relators continue to provide no factual assertions to support this claim.

11        **A.    Procedural History**

12        On February 17, 2015, Relators filed their initial complaint against Morpho

13  U.S., Inc., Safran U.S., Inc. and Safran Group, S.A. as part of a *qui tam* action on

14  behalf of the United States and the State of California alleging violations of the FCA

15  and the CFCAct.  (Dkt. #1).  After conducting independent investigations, both the

16  Department of Justice and the California Attorney General declined to intervene on

17  April 19, 2016, and July 29, 2016, respectively.  (Dkts. #5, #13).

18        On August 5, 2016, the Honorable Howard R. Lloyd, United States Magistrate

19  Judge, granted the government's motion to unseal the complaint and related

20  documents in this case, thereby triggering Relators' responsibility to serve the

21  complaint.  (Dkt. #14).

22        On August 10, 2016, Relators filed their First Amended Complaint ("FAC")

23  against the same Defendants named in the original complaint.  (Dkt. #16).  After

24  serving the FAC on Morpho U.S., Inc., Relators realized that Morpho U.S., Inc. "is a

25  completely separate entity having no connection whatsoever with the business of

26  Defendant [SUSA] and/or Safran Group, S.A., or with such defendants' division or

27  group coincidentally known as Morpho, or with any of the conduct alleged in this

28  action." (Dkt. #31 at 2).  In light of this "discovery," on October 14, 2016, Relators

1    dismissed Morpho U.S., Inc. from this action at the request of Morpho U.S., Inc.'s

2    counsel.  (Dkt. #30).

3    On September 15, 2016, the case was assigned to the Honorable Lucy H. Koh,

4    United States District Judge.  On October 12, 2016, the Parties jointly filed a Case

5    Management Statement (Dkt. #29); and on October 19, 2016, the Parties appeared at

6    an Initial Case Management Conference.  On October 19, 2016, the Court issued its

7    Case Management Order, which identified December 19, 2016 as the "Last Day to

8    Amend the Pleadings/Add Parties.  (Dkt. #36).

9    On October 25, 2016, Relators and Safran USA, the only Defendant that had

10   been properly served at that time, filed a stipulation whereby Safran USA agreed

11   that Relators could file the Second Amended Complaint ("SAC") without the need

12   to file a motion for leave to amend.  (Dkt. #37).  On that same date, Relators filed

13   the SAC and served Safran USA.  (Dkt. # 38).

14   On November 8, 2016, Safran USA filed a Motion to Dismiss the SAC

15   pursuant to Rules 12(b)(1) and 12(b)(6) on the grounds that Relators failed to plead a

16   claim with sufficient particularity, failed to sufficiently allege *scienter*, and failed to

17   state a claim over which the Court has subject matter jurisdiction.  (Dkt. #45).

18   On December 14, and 19, 2016, Relators effected service on Safran and

19   Safran SIS in France, pursuant to the procedures of the Hague Convention.  On

20   January 9, 2017, Safran and Safran SIS jointly filed their own Motion to Dismiss the

21   SAC on grounds similar to those presented by Safran USA.  (Dkt. #49).

22   On January 19, 2017, the Court granted Safran USA's Motion to Dismiss the

23   SAC with leave to amend.  (Dkt. #54).  Specifically, the Court ruled that "Relators

24   have insufficiently pled their claims under Rule 9(b)," because Relators had

25   "impermissibly lumped" Defendants together and had failed to link Safran USA to

26   the allegedly fraudulent actions or the sale of fingerprint identification products.

27   (Dkt. #54 at 15, "the lack of any allegations regarding the sale of fingerprint

28   identification products or false representations against Safran USA specifically and

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 6 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

the lumping of Defendants warrants dismissal.").  In addition, the Court held that FCA claims such as those at issue here cannot be imputed from one party to the other based purely on a parent-subsidiary relationship, (Dkt. #54 at 15-16), and further held that it was "impossible" to determine from Relators' allegations in the SAC the role that any Defendant played in the alleged false certification and sale of products (Dkt. #54 at 16).  The Court rejected Relators' attempt to excuse their pleading shortcomings based on Defendants' corporate structure and expressly held that the "complicated nature of Safran Global's corporate structure does not excuse the requirements of Rule 9(b)."  (Dkt. #54 at 17).  In addition, the Court held that Relators failed to allege with the requisite particularity "who made the allegedly false statements, when those statements were made, where those statements were made, and how those statements were made" and also failed to state what false claims were at issue, against whom false claims were made, or that any alleged misrepresentation was a material cause of the government's payment of money. (Dkt. # 54 at 18-23).

Having found that Relators failed in numerous respects to satisfy Rule 9(b), the Court did not reach Safran USA's arguments concerning *scienter* and original source.  (Dkt. #54 at 8). The Court gave Relators one more chance to cure the defects in their pleading, stating that Relators' "failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice of Relators' deficient claims and deficient prayer for damage."  (Dkt. # 54 at 24).

On January 19 and 20, 2017, the Court issued two orders, respectively, staying all discovery.  (Dkts. #55, #56).  The Court held:

> In fact, even though Relators purport to be 'insiders' of Defendants in this case, the second amended complaint provided no specifics about Safran USA's role in the alleged fraud whatsoever and, instead, relied on public information…This is especially troubling given that the second amended complaint was Relators' third attempt at pleading a claim against Defendants….' *Qui tam* suits are meant to encourage insiders privy to a fraud on the government to blow the whistle on the crime.'  Because 'insiders privy to a fraud on the government should have adequate knowledge of the wrongdoing at issue, such insiders should be able to comply with Rule 9(b).' *Bly-Magee v. Califor*nia, 236 F. 3d 1014, 1019 (9th Cir. 2001).

1   (Dkt. #56 at 2).

2       On February 28, 2017, Relators filed a Motion for Leave to File Fourth

3   Amended Complaint Adding Additional Defendants—Morphotrak and Morphotrust.

4   (Dkt. #78).  On May 9, 2017, the Court denied this Motion.  In reaching this

5   decision, the Court held:

6       The principle that Relators should be insiders with sufficient knowledge to
        state a claim under Rule 9(b) is inconsistent with the instant motion, which
7       seeks leave to file an amended complaint to add new parties two years after
        Relators filed the instant case and after Relators amended their complaint
8       twice.  If Relators are actually former high-ranking insiders with knowledge
        of the alleged fraud, Relators were not diligent because such insiders
9       purportedly would have had knowledge of Morphotrak's and Morphotrust's
        role in the alleged fraud.
10

11  (Dkt. #83 at 10).

12      Relators' filed their amended TAC on May 12, 2017.  (Dkt. #84).  For the

13  reasons discussed below, the TAC suffers from exactly the same defects as the prior

14  pleadings and, as a result, it should be dismissed with prejudice and without leave to

15  amend.

16  ## III.   LEGAL ARGUMENT

17  ### A.   The TAC Should Be Dismissed Pursuant To Rules 8(a), 9(b) And
18  ### 12(b)(6).

19      The FCA imposes liability on anyone who presents a false or fraudulent

20  claim, or makes or uses false statements material to a false or fraudulent claim, or

21  conspires to do so.  31 U.S.C. § 3729(a)(1)(A)-(C).

22      Because the FCA is a fraud statute, the TAC is subject to the pleading

23  requirements of both Federal Rules of Civil Procedure 8(a) and 9(b).  The

24  heightened pleading standard of Rule 9(b) also requires a relator to state with

25  particularity the circumstances constituting fraud or mistake, including the "who,

26  what, when, where, and how of the misconduct charged."  *U.S. ex rel. Ebeid v.*

27  *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted).  To satisfy Rule

28  8(a)(2), a relator must plead facts sufficient to state a claim for relief that is plausible

on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Moreover, pursuant to Rule 12(b)(6), a court must dismiss any portions of a complaint that fail to state a claim upon which relief can be granted, either due to a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged" under a cognizable legal theory. *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (citation omitted). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570. The Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). The Court, however, is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." (Dkt. #54 at 6, *citing Fayer v. Vaughn*, 49 F. 3d 1061, 1064 (9th Cir. 2011)).

### 1.    The TAC Should Be Dismissed Because It Fails To Plead With Particularity That Any False Claims Were Submitted.

The FCA imposes liability on anyone who presents a false or fraudulent claim, or makes or uses false statements material to a false or fraudulent claim, or conspires to do so. 31 U.S.C. § 3729(a)(1)(A)-(C). "The essential elements of FCA liability under § 3729 (a)(1)(A) or (a)(1)(B) are '(1) false statement or fraudulent course of conduct, (2) made with *scienter*, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F. 3d 1166, 1174 (9th Cir. 2006). Each of these elements, with the exception of

*scienter*, must be pled with sufficient particularity to meet the heightened pleading requirements of Rule 9(b).  *Bly-Magee v. California*, 236 F. 3d 1014, 1018 (9th Cir. 2001).  Thus, as both the Ninth Circuit and this Court have held, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." (Dkt. #54 at 11, *citing  Swartz v. KPMG LLP*, 476 F. 3d 756, 764 (9th Cir. 2007)). In other words, "[a]verments of fraud must be accompanied by '*the who, what, when, where, and how*' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F. 3d 1097, 1106 (9th Cir. 2003); *see also* Dkt. #54 at 11-12. (emphasis added). "[A]n FCA plaintiff must allege, at the very least, 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that [false] claims were actually submitted."  (Dkt. #54 at 12-13 citing *Ebeid,* 616 F. 3d at 998).

Rule 9(b) likewise prevents litigation from serving as a fishing expedition to discover "unknown wrongs."  *Bly-Magee*, 236 F.3d at 1018 (citation omitted); *see also U.S. ex rel.Cafasso v. General Dynamics C4 Systems, Inc.,*637 F.3d 1047, 1055 (9th Cir. 2011).  As this Court has repeatedly recognized, and consistent with Ninth Circuit law, Rule 9(b) "should easily be met in *qui tam* actions" since *qui tam* relators—as purported "insiders privy to a fraud on the government"—are expected to be in a unique position to set forth with specificity the circumstances of the alleged fraud.  *U.S. v. ex rel. Cericola v. Fed. Nat'l Mortg. Assoc.*, 529 F. Supp. 2d 1139, 1144 (C.D. Cal. 2007); *Bly-Magee*, 236 F.3d at 1019. *See also* Dkt. #54 at 17; Dkt. #83 at 10.

### 2.   Relators Continue To Impermissibly "Lump" All Defendants Together And Fail To Differentiate Their Allegations Against Any Particular Defendant.

The requirements of Rule 9(b) are intended to provide each individual defendant with notice of "the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 10 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (citation omitted). As this Court stated in its Order granting Safran USA's motion to dismiss, Rule 9(b) does not permit Relators to "lump multiple defendants together," but rather requires "plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 997-98 (9th Cir. 2011) (citation omitted); *U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods., Inc.,* No. 12-cv-0602-L (NLS), 2013 WL 774177, at *4 (S.D. Cal. Feb. 28, 2013) (finding that the "commingling" of two defendants throughout the second amended complaint "render[ed] [it] . . . unclear as to what was each Defendant's role in the alleged fraud"; and therefore, "Relator ha[d] not met Rule 9(b)'s threshold requirements by aggregating allegations against multiple Defendants"). Accordingly, in the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme, which Relators have continued to fail to do here. *Swartz*, 476 F.3d at 765.

Here, Relators continue to "commingle" entities and fail yet again to state the role that any Defendant played in the alleged fraud. Relators continue to allege that Defendants maintained "a labyrinthine convoluted tangled web of agent subsidiary entities that Safran, S.A., at all times alleged herein, directly and indirectly wholly owns and uses as agents in an ever-changing shell game." TAC ¶ 9. Relators also continue to allege in conclusory terms that "each Safran Defendant worked at the direction of Safran, S.A. and each other Safran Defendant, to injure the United States and the State of California," acting "by and through their agents, subsidiaries, and managerial employees." TAC ¶ 9. But the role, if any, that each Defendant played in the alleged fraud is undefined. *See, e.g.*, TAC ¶¶ 23-29 (focusing on contracts by non-parties). Relators took no steps to cure their prior pleading shortcomings and disregarded this Court's prior admonition that "FCA claims

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 11 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

cannot be imputed from one party to the other based purely on a parent-subsidiary relationship."  (Dkt. # 54 at 16 citing *U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Prods., Inc.,* No. 12-cv-0602-L (NLS), 2013 WL 774177, at *4 (S.D. Cal. Feb. 28, 2013)).  As with their prior allegations, Relators' entire theory runs counter to the general principle "deeply ingrained in our economic and legal systems [] that a parent corporation is not liable for the acts of its subsidiaries.  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998).

Relators allege no new facts about Safran USA's involvement in any allegedly fraudulent scheme.  (Dkt. #54 at 17).  The allegations against Safran USA are limited to a single paragraph in which Relators regurgitate publicly available information from Safran USA's website.  TAC ¶ 10.  *See also* Request Judicial Notice ("RJN"), Ex. A, http://www.safran-usa.com/.  Therefore, once again, "the lack of any allegations regarding the sale of fingerprint identification products or false representations against Safran USA specifically and the lumping of Defendants warrants dismissal." (Dkt. #54 at 17).

Relators' allegations against Safran and Safran SIS fare no better.  There is no allegation in the TAC that either Defendant was a party to a government contract or participated in the sale of fingerprint identification products to any government entity.  The government contracts at issue were entered by other companies who are not Defendants.  TAC ¶¶ 23 (referencing MorphoTrak contract with Lockheed), 29 (referencing MorphoTrust contract with DOJ).  Although Relators mention three Safran executives, they do not allege that they played any role in the contracting or sale of any products to the government—instead, the executives allegedly failed to act by keeping "secret from representatives of the United States and the State of California the Russian origin of the subject fingerprint identification algorithms." TAC ¶ 19.  But there is nothing connecting these executives to any actual fraudulent government sales.  *See* TAC ¶ 24.  The most that the TAC alleges is that the executives made "numerous visits to the United States" and were somehow

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 12 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

"instrumental" in the awarding of government contracts to non-parties.  TAC ¶¶ 23, 24, 29.  These non-factual allegations are not even close to sufficient to support a viable FCA claim against Safran or Safran SIS.[4]  Thus, as with Safran USA, the claims against Safran and Safran SIS should be dismissed.

### 3. Relators Fail to Allege Particular Details as to the "Who, What, Where, When and How" of the Alleged Scheme.

In its prior Order, the Court addressed whether Relators had adequately alleged "particular details of a scheme to submit false claims."  (Dkt #54 at 17, *citing Ebeid*, 616 F.3d at 998).  Such allegations must provide sufficient details of the "who, what, where, when, and how" of the allegedly fraudulent activity. (Dkt. #54, *citing Vess*, 317 F. 3d at 1106).  The Court noted that the purpose of Rule 9(b) is to ensure that Defendants have notice of "the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  (Dkt #54 at 17, *citing* Neubronner, 6 F.3d at 671).

When considering the SAC, the Court previously held that Relators had failed to satisfy Rule 9(b) because they had failed to state "who" made the alleged false misrepresentations, "when" the alleged misrepresentation occurred, "where" the misrepresentations were made, "what" the false claims were made, and whether the alleged misrepresentation was material to the government's payment.  (Dkt. #54 at 18-23).  Relators cure none of these defects in their latest pleading.  Like the SAC, the TAC pleads no facts concerning ***who*** made the allegedly false statements, ***when*** those statements were made, ***where*** those statements were made, ***how*** those statements were made, and ***what*** particular misconduct constituted the alleged fraud. Relators have failed yet again to meet *any* of the requirements for stating a valid FCA claim.

---

[4] Neither Safran nor Safran SIS entered into any contracts for the sale of fingerprint technology products with any government entity in the United States nor made any representation to a United States federal or state governmental entity in connection with any such contract.  *See* Declaration of Stephane Abrial ("Abrial Decl."), ¶ 3; Declaration of Yves Charvin ("Charvin Decl."), ¶ 3.

i.   **Relators Fail to Identify *Who* At Defendants Was Involved In Conduct That Allegedly Violated The FCA**.

With respect to "who" made the allegedly false representations, the relator "must identify the individual who made the alleged[ly false] representation" at issue as well as "the content of the alleged representation." *Glen Holly Entm't, Inc. v. Tektronix, Inc*., 100 F. Supp. 2d 1086, 1094 (C.D. Cal. 1999).  As this Court recognized, "Where fraud has allegedly been perpetrated by a corporation, a plaintiff must allege the names of the employees or agents who purportedly made the statements or omissions that give rise to the claim, or at a minimum identify them by title and/or responsibility." (Dkt. #54 at 18, *citing U.S. ex rel. Modglin v. DJO Glob. Inc*., 114 F. Supp. 3d 993, 1016 (C.D. Cal. 2015)).

Relators provide none of this information.  Instead of providing "names" or "titles" of the people who made any misstatements, Relators refer to "Defendants" or "Safran top management" throughout most of their pleading and fail to provide any specific information about to whom they refer or about what those unnamed individuals supposedly did or said.  TAC ¶ 16.  The few individuals who are named in the TAC are not alleged to have made any statements or omissions that could give rise to a claim—their only alleged role appears to have been their "awareness" about the origin of the technologies that were being sold by other companies who are not defendants in this case.  *See* TAC ¶ 24.  Relators do not link any particular individual to any allegedly fraudulent sales to the government. TAC ¶ 18, 19, 23-24. Relators' vague and indirect insinuations about unspecified misstatements and omissions that bear some tangential connection to government contracts involving non-parties are not nearly enough.

Nor do Relators' references to Frank Barret save their claims.  Barret, an engineer who used to work at Safran SIS, is alleged to have known about the Russian origin of the algorithms and to have "participated in the sale of such AFIS products" to unspecified governmental agencies.  TAC ¶ 19.  But there is nothing in

1   the TAC to suggest that Mr. Barret made any misrepresentation to the government at

2   any time—in fact, there is no allegation that the company for which Barret worked

3   when he allegedly received the Russian algorithms ever sold AFIS products to a

4   U.S. or California governmental agency at any time. TAC ¶ 19.  Relators' failure to

5   identify anyone who made an allegedly false representation in connection with a

6   government sale is fatal to their FCA claim. *Modglin,* 114 F. Supp. 3d at 1016; *U.S.*

7   *ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001);

8   *Flowers v. Wells Fargo Bank, N.A.*, No. C 11–1315 PJH, 2011 WL 2748650, at *6

9   (N.D. Cal. July 13, 2011).

### ii.   Relators Fail To Identify *What* Alleged Conduct By The Defendants Violated The False Claims Act

12      Just as Relators fail (again) to plead who made any alleged misrepresentations

13   (and the content of those misrepresentations), they also fail (again) to allege what

14   misrepresentations were made.  "An actual false claim is the *sine qua non* of an FCA

15   violation."  *Cafasso*, 637 F.3d at 1055 (quotation and citation omitted).  It seems to

16   be a fairly obvious notion that a False Claims Act suit ought to require a false claim.

17   *Id.* (quoting  *Aflatooni*, 314 F.3d 995, 997 (9th Cir. 2002)).  "[T]he [FCA] attaches

18   liability, not to the underlying fraudulent activity or to the government's wrongful

19   payment, but to the '***claim for payment***.'"  *Id.* (quoting *United States v. Rivera*, 55

20   F.3d 703, 709 (1st Cir. 1995)) (emphasis added).  Although the Ninth Circuit does

21   not "require a relator to identify representative examples of false claims to support

22   every allegation," the relator must allege "particular details of a scheme to submit

23   false claims paired with reliable indicia that lead to a strong inference that claims

24   were actually submitted." *Ebeid*, 616 F.3d at 998-99 (citation omitted).

25      Relators do not meet this threshold requirement because the TAC fails to

26   identify any false claims resulting from the alleged conduct—in other words, the

27   "what" that must be described with particularity to satisfy Rule 9(b) is absent from

28   the pleading.  Despite now having had four opportunities to plead a claim, Relators

Hogan Lovells US LLP
Attorneys At Law
Los Angeles

- 15 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

1   still never allege that any Defendant ever made a claim for payment to the

2   government that included a material false statement.  Instead, Relators continue to

3   make vague accusations that Papillon-owned algorithms were included in fingerprint

4   and palmprint technology sold to the government by others.  Relators fail to explain

5   which of the Defendants used the Papillon algorithms or what aspect, if any, of those

6   products was misrepresented to the government.  In their misnamed "Particulars

7   Regarding False Claim via Certification of Compliance," Relators provide one

8   paragraph of generalized allegations in which all Defendants are lumped together

9   and are alleged "via Defendants' personnel" to have "routinely" and "regularly"

10  falsely certified the country of origin of software to federal and state entities.  TAC ¶

11  34.  Relators fail to identify a single, specific instance of any allegedly false claim

12  that any named Defendant submitted to the government for payment at any time.

13       Instead of alleging facts to suggest that Defendants made a false claim,

14  Relators argue again that Defendants should be liable based on the unspecified

15  actions of their non-party "agents" and "subsidiaries."  TAC ¶¶ 14, 15, 19, 23, 25,

16  29.  The Court already rejected Relators' attempts to impute liability to Defendants

17  based purely on a parent-subsidiary relationship. (Dkt. #54 at 16); *see also Pecanic,*

18  2013 WL 774177 at *4–5 ("Relator's allegations that [one defendant] is a wholly-

19  owned subsidiary and that [the subsidiary defendant] was at all times subject to [the

20  parent company defendant's] control with respect to these products is insufficient to

21  support alternatively treating the two corporate entities as one."); *see also U.S. ex*

22  *rel. Hockett v. Columbia/HCA Healthcare Corp.*, 498 F. Supp. 2d 25, 59-60 (D.D.C.

23  2007) (holding that a parent corporation is not liable for its subsidiary's FCA

24  violation).

25       Even assuming Relators alleged facts to suggest that Papillon's licensed

26  technology was incorporated into products that were sold to a government entity

27  (and they have not done so), this alone would not necessarily violate the TAA or

28  other laws.  The U.S. Customs and Border Protection ("CBP") has specified that

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 16 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

software and technology can incorporate pieces of foreign software and technology and still be deemed to have been made in the United States.  For example, the CBP recently found that a software product whose source code was written in Malaysia, a non-Designated Country, but was compiled and installed in the United States, was deemed to have been made in the United States for purposes of the TAA.  *See* RJN Ex. B, Customs Ruling HQ H268858 (Feb. 12, 2016).  In making such a determination, the CBP looks to whether the software that was partially created in a non-Designated Country undergoes a substantial transformation in the United States or other Designated Country.[5]  When reviewing software and technology, the CBP reviews the following factors in determining substantial transformation:

- where software research is performed;
- where software specifications/architecture/performance criteria is developed;
- where software source code is programmed;
- where software is made executable;
- where compilation of source code into object code (software "build") is done; and
- where software is prepared/finalized for distribution or sale.

RJN, Ex. C, Custom Ruling HQ H243606 (Dec. 4, 2013), 78 Fed. Reg. 75362 (Dec. 11, 2013).

The TAC provides none of the foregoing essential information, despite Relators having notice of such requirements.  Indeed, it fails to provide any information or factual allegations about the creation of the fingerprint identification technology other than the naked assertion that it is Papillon technology.  TAC ¶ 19.  Thus, it is unclear to Defendants "what" was misrepresented to the government during the negotiations or sale of fingerprint and palmprint technologies.  In sum,

---

[5]  Both France and the United States are on the list of TAA Designated Countries. RJN Ex. D.

Relators' allegations fail to plead with the requisite particularity "what" about Defendants' representations constituted an "actual false claim."

### iii. Relators Fail To Identify *When*, *Where*, and *How* The Defendants' Conduct Allegedly Violated The FCA

The TAC also fails to specify with particularity when any misrepresentations were made, where the misrepresentations appeared, or how any Defendant engaged in any fraudulent conduct.

The only time frame alleged in the TAC that arguably relates to any action by a named Defendant is between "2007 and 2010," when Frank Barret, who allegedly was working at Safran SIS, incorporated "five Papillon algorithms" into "Morpho's AFIS." TAC ¶ 19. But as the Court previously found, an allegation of unspecified dates in unspecified years does not satisfy the heighted pleading requirement of Rule 9(b). (Dkt #54 at 19). *See, e.g., Modglin*, 114 F. Supp. 3d at 1025; *Glen Holly Entm't,* 100 F. Supp. 2d at 1094 ("[A]llegations such as 'during the course of discussions in 1986 and 1987,' and 'in or about May through December 1987' do not make the grade under Rule 9(b)." (brackets and citation omitted)).

Relators attempt to avoid having to allege the "when" of the fraud by alleging the dates when certain government contracts were entered into by non-parties MorphoTrak and MorphoTrust. As already discussed, the actions of these companies cannot be attributed to Defendants based solely on their parent-subsidiary relationship. Furthermore, the fact that certain contracts were effective on certain dates does not, without more, suggest that there was any fraud that occurred on those dates. Relators' failure to connect any fraud by any Defendant to any date is another fatal flaw in their FCA claims.

Relators also fail again to satisfy Rule 9(b)'s "where" requirement. "Under the 'where' requirement, Rule 9(b) requires an allegation of the context of the false representations." (Dkt. #54 at 20). Like the SAC, the TAC does not identify the documents that contained any misrepresentations and, thus, "fails to allege whether

1   the misrepresentations were integrated into the contract for sale, were made

2   separately by letter or by email, or were made as part of conversations among

3   representatives of the parties." (Dkt. #54 at 20-21).

4          In addition, Relators fail again to allege "how" the misrepresentations were

5   made.  Relators offer no specifics regarding how, if at all, any Defendant

6   participated in the alleged submission of any actionable false claim.  Instead, they

7   allege a circuitous scheme in which Daniel Vassey, President and CEO of

8   MorphoTrak, LLC, "passed on" this "knowing misrepresentation" by "Mr. Jainsky

9   and other Safran top management to the United States through prime contractor

10  Lockheed Martin."  TAC ¶ 23.  The "knowing misrepresentation" that supposedly

11  was "passed on" is never identified nor are any details about how it was provided.

12  In addition, the TAC never explains how any Defendant could have knowingly (or

13  with reckless disregard) violated the FCA, particularly where the allegations about

14  the existence of the Sagem-Papillon Agreement are unconnected to any specific

15  allegation of any Defendant's knowing submission of a false claim to the

16  government for payment.  *See Aflatooni*, 314 F.3d at 1002 (explaining that it is "not

17  enough" for a relator "to describe a private scheme in detail but then to allege simply

18  and without any stated reason for his belief that claims requesting illegal payments

19  must have been submitted") (*quoting U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290

20  F.3d 1301, 1311 (11th Cir. 2002)).

21         In short, Relators' failure to connect their allegations to any particular

22  Defendant or to any particular government contract is fatal to their claim.  As the

23  Court explained in its prior ruling:  "To the extent that Qui Tam Plaintiffs intend to

24  assert claims relating to unspecified projects and public entities, those claims are

25  neither plausible nor pleaded with particularity, and such claims are dismissed."

26  (Dkt. #54 at 22, *citing E. Bay Mun. Util. Dist. v. Balfour Beatty Infrastructure, Inc*.,

27  2013 WL 6698897, at *4 (N.D. Cal. Dec. 19, 2013)).

28         **iv.   <u>Relators Fail to Specifically Allege the Casual Connection
              Between the Misrepresentation And the Claim for Payment</u>**

Hogan Lovells US
LLP
Attorneys At Law
Los Angeles

- 19 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

1   The Court also previously held that, "In addition to alleging that

2   misrepresentations occurred and that a claim for payment was submitted, Relators

3   must also allege that the misrepresentations at issue were material to the decision to

4   pay the claim and caused the payment of the claim." (Dkt. #54 at 22, *citing Hendow*,

5   461 F.3d at 1174 (holding that the fraudulent activity must be the material cause of

6   the government's payment of money)).

7   Relators ignore this requirement as well.  They allege in the TAC that "for

8   national security, border protection and other purposes" it was material to

9   government entities that the products purchased were "*French* technology, owned

10  and developed by Safran."  TAC ¶ 16.  Relators, however, do not identify any facts,

11  contractual language, or statements to support this conclusory assertion.  They again

12  make no connection between the alleged false certification and the government's

13  decision to pay.

14  Furthermore, other than stating that there were violations of the Trade

15  Agreement Act and the Sherman Antitrust Act, Relators provide no details as to how

16  the alleged violations occurred, what misrepresentations formed the basis for the

17  violations, and whether the violations were material to the government entering into

18  any contract with any Defendant.  In fact, Relators do not even allege that any

19  Defendant ever entered into a government contract at any time.

20  As with the SAC, "there is no allegation connecting the false certifications to

21  the contracts for sale." (Dkt. #54 at 23).  The TAC is woefully inadequate in

22  presenting any casual connection between the alleged misrepresentations and the

23  governments' decision to pay for products and services provided by the non-party

24  subsidiaries of Defendants.  Relators solely rely on conclusory statements without

25  providing any support for these assumptions.

26  **B.  Relators Fail to Plead *Scienter* Under Rule 8(a)(2).**

27  It is not necessary for the Court to reach the question whether Relators have

28  adequately alleged *scienter* under Rule 8(a).  However, Relators' failure to plead

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 20 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

*scienter* provides further cause for dismissing their claims.  *Iqbal*, 556 U.S. at 686-87; *Twombly*, 550 U.S. at 570.  Here, none of the facts Relators have pleaded support their conclusory allegations that Defendants knowingly submitted false claims or did so with reckless disregard of the truth.  In the absence of any factual allegations supporting *scienter*, Relators' formulaic recitation of the knowledge elements of an FCA violation (*see* TAC ¶¶ 19, 23, 24, 29) is too conclusory to plead a plausible claim for relief under Rule 8(a).

## C. <u>Relators Are Not The Original Source Of Any False Claim Allegations Relating to Defendants.</u>

Similarly, it is not necessary for the Court to reach the question of "original source" to decide this motion.  However, Relators' inability to establish their status as original sources under the FCA provides a separate and independent basis to dismiss their FCA claims.

Where, as here, the purported "whistleblowers" file suit as relator-plaintiffs, and the government elects not to intervene, the relators may proceed with the action unless they are subject to jurisdictional preclusion under Section 3730(e).  *See* 31 U.S.C. § 3730(e); *see also Hoggett,* 2014 WL 3689764, at *4.  "That preclusion may occur if there has already been a 'public disclosure' of the fraudulent practices in question."  *Id.* at *4.  "[I]f public disclosure has occurred and Relators cannot qualify as an 'original source' of the false claim allegations, this Court lacks subject matter jurisdiction over the previously disclosed allegations," *id.*, and any FCA claims based on those allegations must be dismissed pursuant to Rule 12(b)(1).[6]

---

[6] Because the wrongful conduct alleged in the TAC occurred prior to 2010 (TAC ¶19), the pre-2010 version of the FCA applies here.  While the version of the statute as amended in 2010 states only that the court "shall dismiss" such an action, 31 U.S.C. § 3730(e)(4)(A) (2010), the pre-2010 version of the FCA clearly states that a district court ***lacks subject matter jurisdiction*** over a claim that was based on publicly disclosed information.  *Id.* at § 3730(e)(4)(A) (2006) ("***No court shall have jurisdiction*** over an action under this section based upon the public disclosure of allegations." (emphasis added)).  *See, e.g., U.S. ex rel. Yagman v. Mitchell*, No. CV 14-9771 DMG (PJWx), 2016 WL 857301 at *6 (C.D. Cal. Mar. 4, 2016)), *appeal docketed*, No. 16-55346 (9th Cir. Mar. 7, 2016) (applying pre-2010 version of the FCA that was in effect at the time the allegedly fraudulent conduct occurred); *Malhotra v. Steinberg*, 770 F.3d 853, 857 (9th Cir. 2014) (noting that the public

Here, Relators' claims against Defendants for violations of the FCA are jurisdictionally prohibited by the FCA's public disclosure bar because the facts alleged come from public sources available on various websites.[7]

### 1. Relators' Allegations Against Defendants Have Been Publicly Disclosed on Safran or Government Websites.

When analyzing whether a particular claim is precluded by the FCA's public disclosure bar, the first question is whether the facts underlying the claims were publicly disclosed. To answer this question, the Court must make "two distinct but related determinations." *A-1 Ambulance Serv., Inc. v. California,* 202 F.3d 1238, 1243 (9th Cir. 2000). First, it must "decide whether the public disclosure originated in one of the sources enumerated in the statute." *Id.* If there has been a public disclosure through one of these sources, the Court must then decide "whether the content of the disclosure consisted of the allegations or transactions giving rise to the relator's claim[s]." *Id.* (citation omitted)*; see also U.S. ex. rel. Biddle v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 536-40 (9th Cir. 1998).[8]

Here, Relators again fail to allege anything but the most generic facts

---

disclosure provision was amended in 2010, but applying earlier version and treating public disclosure as a jurisdictional bar where events giving rise to the claim occurred before 2010).

[7]    Relators rely on publicly sourced information to formulate their allegations. This information is essential to Relators' claims. "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint [or whose contents are essential to a claim] and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.' *Parrino v. FHP, Inc*. 146 F. 3d 699, 205 (9th Cir. 1998) (as amended)." (Dkt. #54 at 3). The Request for Judicial Notice contains information from public websites that Relators used in the TAC.

[8]    Public disclosure occurs when allegations are disclosed in the "news media," and a publicly available website qualifies as "news media" under the FCA.  *See*  31 U.S.C. § 3730(e)(4)(A); *U.S. ex. rel. Green v. Serv. Contract Educ. & Training Tr. Fund*, 843 F. Supp. 2d 20, 32 (D.D.C. 2012); *U.S. ex rel. Unite Here v. Cintas Corp*., C 06-2413 PJH, 2007 WL 4557788, at *14 (N.D. Cal. Dec. 21, 2007) ("The 'fact' of the contracts between [defendant] and the federal government was publicly disclosed in the news media, as that information was available on the Internet."); *U.S. ex rel. Brown v. Walt Disney World Co.,* No. 6:06-cv-1943-Orl-22KRS, 2008 WL 2561975, at *4 (M.D. Fla. June 24, 2008) (finding that a Wikipedia website qualifies as "news media"), *aff'd*, 361 F. App'x.  66 (11th Cir. 2010) (per curiam).

concerning Defendants' business dealings.  Defendants' corporate websites and/or those of their non-party affiliates include a number of generic facts concerning the business activities of various Safran-related companies in the United States as well as their accomplishments with government sales:

- Non-party MorphoTrust USA publicly disclosed its status as a "preferred partner" with several large government contracts, including those with the Transportation Security Agency, the FBI, and the Department of Justice.  *Compare* TAC ¶ 14 *and* RJN Ex. E.

- Non-party "MorphoTrak, the recognized world leader in fingerprint identification, has been awarded a contract by **Lockheed Martin to provide fingerprint identification technology for the FBI's Next Generation Identification (NGI) system**.  **Daniel Vassy, CEO of MorphoTrak**, stated: 'We are very pleased to be a part of the team, led by Lockheed Martin, which will work with the FBI in upgrading their identification services. …. **It will also enhance our position as the leading U.S. provider of Automated Fingerprint Identification Systems (AFIS), supplying law enforcement and civil identification systems to 28 states, numerous local government agencies and several other Federal agencies.**")  *Compare* TAC ¶ 23 *and* RJN, Ex. F, MorphoTrak Chosen as Biometric Provider for FBI Next Generation Identification Program (September 8, 2009).

*See also*, RJN Ex. A, http://www.safran-usa.com; RJN Ex. G http://www.morpho.com/en/about-us.

Relators similarly rely on industry and government websites, which provide detailed information about Defendants' affiliates' various projects.  For example, the TAC lifts language directly from Findbiometrics.com, an industry website, which reported that MorphoTrak: "recently provided the FBI with its Next Generation Identification program, which can scan all of a hand's "Major Case Prints"; and that its MorphoBIS platform is widely used by law enforcement agencies across the U.S.  Biometric technology is increasingly being adopted by government security agencies even at the local level, and globally there's growing demand for biometric tech for security purposes."  *Compare* TAC ¶ 28 *and* RJN Ex. H, MorphoTrak Celebrates 40 Years of Fingerprints (December 9, 2014).  Similarly, the details of the Blanket Purchase Agreement between the Department of Justice and non-party MorphoTrust are detailed on FedSpending.org, a government oversight website.  *Compare* TAC ¶ 29 *and* RJN, Ex. J.  *Compare also*, TAC ¶ 23, 25, 28 *and* RJN Exs. J, K;  TAC

HOGAN LOVELLS US LLP
ATTORNEYS AT LAW
LOS ANGELES

- 23 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

1  ¶ 25 *and* RJN Ex. L (Bio-key); TAC ¶ 27 *and* RJN Ex. M (information that

2  upgraded AFIS reduced delays from up to 24 hours for civil cases to 10-15 minutes

3  and accuracy was increased from 92% to 99%); TAC ¶ 28 *and* RJN Ex. N; TAC ¶

4  19 *and* RJN Ex. O (Frank Barret bio).  Because Relators' allegations can be traced to

5  public websites, their claims against the Defendants have been publicly disclosed for

6  purposes of the FCA.

7        **2.       Relators Did Not Played Any Part in the Public Disclosure at**
         **Issue and Have No "Independent Knowledge".**
8

9        Once it is shown that Relators' allegations against Defendants have been

10  publicly disclosed, then Relators must prove by a preponderance of the evidence that

11  they are an "original source" of the allegations under applicable provisions of the

12  FCA.  *Alcan Elec. & Eng'g,* 197 F.3d at 1018.

13       The FCA's "original source" provisions have changed over time.  Prior to

14  2010, the FCA defined the term "original source" to mean "an individual who has

15  direct and independent knowledge of the information on which the [false claim]

16  allegations are based and has voluntarily provided the information to the government

17  before filing an action under this section which is based on the information."  28

18  U.S.C. § 3730(e)(4)(B) (1988). The current version of the statute expands the

19  definition of an original source by allowing disclosure to meet the statutory

20  requirements in two ways.  The statute now allows relators to qualify as original

21  sources if either "(i) prior to a public disclosure . . . [relators] voluntarily disclosed to

22  the Government the information on which allegations or transactions in a claim are

23  based, or (2) . . . [relators have] knowledge that is independent of and materially

24  adds to the publicly disclosed allegations or transactions, and … voluntarily

25  provided the information to the Government before filing an action under this

26  section."  31 U.S.C. § 3730(e)(4)(B) (2010).

27       Here, under any version of the FCA, Relators cannot possibly show that they

28  qualify as an "original source."  As discussed above, most, if not all, of the facts

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
LOS ANGELES

- 24 -

DEFENDANTS' MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK

alleged by Relators against Defendants were taken directly from public websites. Relators had nothing to do with the creation of these websites or the publication of any of the facts concerning the Defendants reflected therein. Relators do not claim otherwise. *See, e.g., Hoggett*, 2014 WL 3689764, at **9-10 (under either version of the FCA, relators were not "original sources" because they never participated in the negotiation, drafting or implementation of the allegedly fraudulent program, and thus, they failed to establish "independent knowledge"); *U.S. ex rel. Devlin v. California*, 84 F.3d 358, 360-61 & n.4 (9th Cir. 1996) (relators were not original sources because they did not see the fraud with their own eyes or obtain knowledge of it through their own labor, but derived it secondhand).

Relators apparently hope to avoid the public disclosure bar by pointing to their purported "disclosure" of the existence of the "Sagem-Papillon Agreement," which they insist somehow shows that Safran products were in fact Papillon products. But this argument fails on many levels. For one thing, Relators make only the most tenuous of connections between the Sagem-Papillon Agreement and any alleged fraud. Moreover, all of the factual allegations contained in the TAC that supposedly give rise to the fraud were lifted from public sources. Because all of the Relators' allegations are generic in nature and were taken wholesale from public websites and industry publications, Relators cannot prove that they are an "original source" of the allegations.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, Defendants' Motion to Dismiss should be granted in its entirety, and the TAC should be dismissed with prejudice and without leave to amend.

Dated: May 26, 2017          HOGAN LOVELLS US LLP

By: /s/ Paul B. Salvaty
Paul B. Salvaty
Attorneys for Defendants

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO. 5:15-CV-00746-LHK