1   DANIEL ROBERT BARTLEY (SBN 79586)
    BARTLEY LAW OFFICES
2   Pruneyard Towers – South Tower
    1999 South Bascom Avenue, Suite 700
3   Campbell, CA  95008-2060
    Telephone 415-847-2060
4   Email DanielBartleyLaw@aol.com

5   Attorney for Plaintiffs and Relators
    Vincent Hascoet and Philippe Pacaud Desbois
6

7

8                    UNITED STATES DISTRICT COURT
9
                    NORTHERN DISTRICT OF CALIFORNIA
10
                             (SAN JOSE)
11

12  UNITED STATES OF AMERICA and        *  Case No. 5:15-cv-00746-LHK
    STATE OF CALIFORNIA, *ex rel.*       *
13  VINCENT HASCOET and PHILIPPE         *  **RELATORS' POINTS AND AUTHORITIES IN**
    PACAUD DESBOIS,                      *  **OPPOSITION TO DEFENDANTS' MOTION**
14                                       *  **TO DISMISS RELATORS' THIRD AMENDED**
                     Plaintiffs,         *  **COMPLAINT PURSUANT TO FRCP 12(b)(1)**
15                                       *  **AND 12(b)(6)**
    vs.                                  *
16                                       *
                                         *  Hearing:        August 24, 2017
17  MORPHO, S.A., a/k/a SAFRAN           *  Hearing         Time: 1:30 P.M.
    IDENTITY & SECURITY, S.A., a         *  Courtroom:      Eight
18  French corporation; et al.           *  Judge:          Hon. Lucy H. Koh
                                         *                  United States District Judge
19                   Defendants.         *
                                         *
20                                       *
                                         *
21                                       *
                                         *
22                                       *
                                         *
23                                       *
                                         *
24                                       *
                                         *
25                                       *
                                         *
26                                       *
                                         *
27  _____     *

28

*United States ex rel Hascoet v. Morpho, Case 5:15-cv-00746-LHK*

1

**TABLE OF CONTENTS**

2

3   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

4

5   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

6
7   (1)   Relators' Third Amended Complaint Sufficiently States Indirect Sales to the
        United States and the State of California, Sufficient to Satisfy Rule 12(b)(1)

8
9   (2)   Relators' Third Amended Complaint Sufficiently States a Cause of Action under
        Rule 12(b)(6), in that Indirect Sales Are Actionable Pursuant to the 2009 FERA
10      amendments to the False Claims Act.

11  (3)   Relators' Third Amended Complaint Sufficiently Apprises Defendants of the
        Fraud of Which They Are Accused, So As to Comply with the Letter and Spirit
12      of Rule 9(b), As Applied by the Ninth Circuit in *Ebeid*.

13
14  (4)   Relators' Third Amended Complaint Sufficiently Pleads Facts Supporting that
        Relators' Status as Original Sources

15
16  (5)   Defendants File Zero Evidence that the False Claims Alleged in this Lawsuit
        Were Publicly Disclosed Prior to the Unsealing of Relators' Qui Tam Case.

17
18  (6)   Relators' Third Amended Complaint Sufficiently Pleads Scienter by Defendants.

19

20  ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21

22  I.    THE FALSE CLAIMS ACT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

23

24  II.   DEFENDANTS CITE *ZERO* EVIDENCE OF PUBLIC DISCLOSURE OF
        THE FALSE CLAIM ABOUT COUNTRY OF ORIGIN OF MORPHO'S
25      FINGERPRINT IDENTIFICATION TECHNOLOGY, ABOUT THE
        UNLAWFUL AGREEMENT NOT TO COMPETE IN THE U.S. MARKET,
26      AND ABOUT DEFENDANTS' FALSE CERTIFICATION OF COMPLIANCE
        WITH THE TRADE AGREEMENTS ACT OF 1979 . . . . . . . . . . . . . . . . . . . . . . . . . 4

27

28

III.   RELATORS, IN HIGH-LEVEL POSITIONS OF MANAGEMENT AND
       INTERNAL COMPLIANCE WITHIN SAFRAN, ARE ORIGINAL SOURCES ...... 5

IV.    RELATORS' THIRD AMENDED COMPLAINT ALLEGATIONS OF FRAUD
       SATISFY THE *EBEID* TEST OF BEING "SPECIFIC ENOUGH TO GIVE
       DEFENDANTS NOTICE OF THE PARTICULAR MISCONDUCT WHICH
       IS ALLEGED TO CONSTITUTE THE FRAUD CHARGED SO THAT THEY
       CAN DEFEND AGAINST THE CHARGE AND NOT JUST DENY THAT
       THEY HAVE DONE ANYTHING WRONG" ................................. 5

V.     RELATORS' THIRD AMENDED COMPLAINT SATISFACTORILY PLEADS
       THEY HAVE PERSONAL KNOWLEDGE OF DEFENDANTS' ALLEGED
       FRAUDULENT SCHEMES, INCLUDING THE ROLE OF SAFRAN U.S.A.,
       INC. ................................................................ 8

       A.    The Public Disclosure Bar ........................................... 8

       B.    Relators' Qualification as Original Sources ............................. 9

VI.    FRAUDULENT CONCEALMENT INCIDENT TO DEFENDANTS' SALES TO
       SUBSIDIARIES, CONTRACTORS, AND INTERMEDIARIES ARE PLED AND
       ACTIONABLE ...................................................... 12

VII.   DEFENDANTS' ARGUMENT THAT RELATORS' THIRD AMENDED
       COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER IS BASELESS .... 12

VIII.  DEFENDANTS' ARGUMENT THAT U.S. CUSTOMS RULINGS INSULATE
       DEFENDANTS FROM LIABILITY FOR FRAUDULENT CONCEALMENT
       OF COUNTRY OF ORIGIN IS INCORRECT, WHERE SUCH ARGUMENT

CONCLUSION ........................................................... 17

1

## TABLE OF AUTHORITIES

2

**Cases**

3
*Bly-Magee v. Cal.*, 236 F.3d 1014, 1018 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

4
*Ebeid ex rel. U.S. v. Lungwitz*, 161 F.3d 993, 998-999 (9th Cir. 2010), cert. denied,
131 S. Ct. 801 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

5
*U.S. ex rel. Driscoll v. Todd Spencer M.D. Medical Group, Inc.*, No. 13-17624,
2016 WL 4191896 (9th Cir. Aug. 9, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

6

7
*United States v. United Healthcare Insurance Co., et al.*, 832 F.3d 1084 (9th Cir.
Aug. 10, 2016), amended at No. 13-56746, 2016 WL 7378731 (9th Cir.
Dec. 16, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

8

9
*United States ex rel. Hopper v. Anton*, 91 F.3d 1261 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . 7

10
*United States v. Neifert-White Co.*, 390 U.S. 228 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

11
*United States ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166 (9th Cir. 2006),
cert. denied, 550 U.S. 930 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

12
*Universal Health Services, Inc. v. U.S. ex rel. Escobar,* 136 S. Ct. 1989 (2016) . . . . . . . . . . . . 3

13
*Viacom, Inc. v. Harbridge Merchant Services, Inc.,* 20 F.3d 771, 776 (7th Cir. 1994) . . . . . . . . 6

14

**Statutes and Rules**

15

16
Cal. Gov. C. §§ 12650 et seq. California False Claims Act ("CFCA") . . . . . . . . . . . . . . . . *passim*

17
Fed. R. Civ. P. Rule 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6,7

18
Fed. R. Civ. P. Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

19
Fed. R. Civ. P. Rule 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

20
Fed. R. Civ. P. Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21
31 U.S.C. §§ 3729-3733, Federal False Claims Act ("FCA"), . . . . . . . . . . . . . . . . . . . . . *passim*

22
31 U.S.C. § 3729(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

23
31 U.S.C. § 3730(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

24
31 U.S.C. § 3730(e)(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25
19 U.S.C. §§ 2501–2581, The Trade Agreements Act of 1979 ("TAA") . . . . . . . . . . . . . . 4,13,14

26
81 Fed. Reg. 42491 (June 30, 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

\\\

27

\\\

28

Fraud Enforcement and Recovery Act of 2009 ("FERA"), Pub.L. 111–21,
        S. 386, 123 Stat. 1617 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Patient Protection and Affordable Care Act ("PPACA"), Pub.L 111-148 . . . . . . . . . . . . . . . . . . 5


**Other Authorities**

106 Cong. Rec. E1546-E1548 (1999) (statement of Rep. Berman) . . . . . . . . . . . . . . . . . . . . . . . . 2

Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1217 (2d ed. 1990)  . . . . . 6

David Freeman Engstrom, Private Enforcement's Pathways: Lessons From Qui Tam
        Litigation, 114 Colum. L. Rev. 1913, 1944 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Press Release, Office of Public Affairs, United States Department of Justice, "Acting
        Assistant Attorney General Stuart F. Delery Speaks at the American Bar
        Association's Ninth National Institute on the Civil False Claims Act and
        Qui Tam Enforcement" (June 7, 2012), http://www.justice.gov/iso/opa/
        civil/speeches/2012/civ-speech-1206071.html 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Press Release, Office of Public Affairs, United States Department of Justice, "Justice
        Department Recovers Over $3.5 Billion from False Claims Act Cases in Fiscal
        Year 2015" (Dec. 3, 2015), http://www.justice.gov/opa/pr/justice-department-
        recovers-over-35-billion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

This is the brief of Relator Vincent Hascoet and Philippe Pacaud Desbois in opposition to Defendants' motion to dismiss Relators' Third Amended Complaint.

**SUMMARY OF ARGUMENT**

(1)     Relators' Third Amended Complaint Sufficiently States Indirect Sales to the United States and the State of California, Sufficient to Satisfy Rule 12(b)(1)

(2)     Relators' Third Amended Complaint Sufficiently States a Cause of Action under Rule 12(b)(6), in that Indirect Sales Are Actionable Pursuant to the 2009 FERA amendments to the False Claims Act.

(3)     Relators' Third Amended Complaint Sufficiently Apprises Defendants of the Fraud of Which They Are Accused, So As to Comply with the Letter and Spirit of Rule 9(b), in as applied by Ninth Circuit standard set forth in *Ebeid*..

(4)     Defendants File Zero Evidence that the False Claims Alleged in this Lawsuit Were Publicly Disclosed Prior to the Unsealing of Relators' Qui Tam Case.

(5)     Relators' TAC Sufficiently Pleads Scienter by Defendants.

**ARGUMENT**

**I.      THE FALSE CLAIMS ACT.**

The False Claims Act ("FCA"), 31 U.S.C. §§ 3729-3733, is the government's primary weapon to prevent fraud against the government. The FCA, known as "Lincoln's Law" (after President Lincoln), was enacted in 1863 by a Congress concerned that suppliers of goods to the Union Army during the Civil War were defrauding the Army. The FCA generally prohibits a person from knowingly presenting or causing to be presented to the government a false claim for payment or approval, or knowingly making or causing to be made a false record or statement material to a false claim.  31 U.S.C. § 3729(a)(1).

Lawsuits to enforce the FCA may asserted directly by the Department of Justice (DOJ) or by private citizens known as qui tam plaintiffs or "relators," who stand to receive a 15% to 30%

1  share in any recovery by the government.  31 U.S.C. § 3730(b).  The FCA provides for treble

2  damages recovery on behalf of the government, plus statutory penalties per violation ranging

3  from $10,781 to $21,563.  81 Fed. Reg. 42491 (June 30, 2016).

4       The FCA prohibits qui tam actions by a relator based on public disclosure of the alleged

5  fraud unless the relator was the "original source" of the public disclosure.  The purpose of such

6  provision is to prevent parasitic qui tam lawsuits based on stale information.

7       Although the FCA requires DOJ to investigate all alleged violations (31 U.S.C. §

8  3730(a)), a civil action under the FCA may be brought either by the United States or, as here, a

9  *qui tam* action by one or more relators in a private action. *Id.* § 3730(a) and (b). In a case

10  brought by a relator, the DOJ has the option of electing to intervene.  A declination to intervene

11  is no reflection on the merit of a case, and in fact the vast majority (80%) of *qui tam* cases do not

12  result in intervention. *See* Press Release, Office of Pub. Affairs, U.S. Dep't of Justice, "Acting

13  Assistant Attorney General Stuart F. Delery Speaks at the American Bar Association's Ninth

14  National Institute on the Civil False Claims Act and Qui Tam Enforcement" (June 7, 2012),

15  http://www.justice.gov/iso/opa/ civil/speeches/2012/civ-speech-1206071.html.

16       In 1999, U.S. Congressman Howard Berman, one of the two sponsors of the 1986

17  Amendments to the FCA, declared:

18       One of the principal goals of the 1986 Amendments was to ameliorate the "lack of
         resources on the part of Federal enforcement agencies." S. Rep. 99-345 at 7. That was
19       one of the reasons we strengthened the qui tam     provisions of the law.  Thus, **we
         expected some meritorious cases to proceed without the Government's intervention,**
20       **and we fully expected that the Government and relators would work together in
         many cases to achieve a just result.**  By dismissing relators based on spurious inter-
21       pretations of the [FCA], the courts are depriving the Government of these additional
         resources.  And those resources have been considerable.

22  *See* 106 Cong. Rec. E1546-E1548 (1999) (statement of Rep. Berman) (emphasis added).

23       On May 20, 2009, President Obama signed the Fraud Enforcement and Recovery Act of

24  2009 ("FERA"), Pub.L. 111–21, S. 386, 123 Stat. 1617, which substantially amended the FCA

25  for the first time since 1986.  Those amendments significantly expanded the scope of liability for

26  individuals and entities that receive government funds.  The most significant aspect of FERA is

27  that it expanded potential liability under the FCA to any person or entity that makes a false

28

1   statement or claim to a *recipient* of federal funds –.*i.e.*, claims directly to the government is not

2   required – liability attaches not only to sales directly to the United States, but also to sales to

3   contractors, subsidiaries, and other intermediaries receiving federal funds.

4           More than 9,000 qui tam actions have been filed. In fact, over one recent five-year period

5   (2008-2013) alone, more than 3,000 lawsuits were filed, and $20 billion was recovered. These

6   numbers rival or even eclipse securities and antitrust in annual filings and recoveries.  *See* David

7   Freeman Engstrom, Private Enforcement's Pathways: Lessons From Qui Tam Litigation, 114

8   Colum. L. Rev. 1913, 1944 (2014).  The United States obtained nearly $3.6 billion in civil

9   settlements and judgments under the FCA during the 2015 Fiscal Year.  *See* Press Release,

10  Office of Public Affairs, United States Department of Justice, "Justice Department Recovers

11  Over $3.5 Billion from False Claims Act Cases in Fiscal Year 2015" (Dec. 3, 2015),

12  http://www.justice.gov/opa/pr/justice-department-recovers-over-35-billion.  This marks the sixth

13  year in a row in which total recoveries in FCA matters exceeded $3 billion.  *Id.*

14          Pursuant to the court's supplemental jurisdiction, Relators allege causes of action on

15  behalf of the State of California pursuant to the California False Claims Act ("CFCA"), Cal.

16  Gov. C. §§ 12650, et seq.  The CFCA was enacted in 1987 to establish a cause of action for false

17  claims for payment submitted to the State of California and its political subdivisions.  The CFCA

18  was modeled after the 1986 amended version of the federal False Claims Act, and is very similar

19  to the federal FCA.  The CFCA was amended effective January 1, 2013, to match changes to the

20  FCA between 2009 and 2010.

21          In June, 2016, the U.S. Supreme Court unanimously validated the "implied certification"

22  theory of FCA liability. According to that theory, when a defendant submits a claim for payment

23  to the government, it impliedly certifies compliance with various regulatory, statutory, and

24  contractual requirements that otherwise apply to it. The theory holds that noncompliance with

25  one of those separate requirements renders the claim "false" even if the defendant actually

26  provided the government the good or service and made no explicit false statement.  *Universal*

27  *Health Services, Inc. v. U.S. ex rel. Escobar,* 136 S. Ct. 1989 (2016).

28

1    **II.    DEFENDANTS CITE *ZERO* EVIDENCE OF PUBLIC DISCLOSURE OF THE**
2    **FALSE CLAIM ABOUT COUNTRY OF ORIGIN OF MORPHO'S FINGER-**
3    **PRINT IDENTIFICATION TECHNOLOGY, ABOUT THE UNLAWFUL**
4    **AGREEMENT NOT TO COMPETE IN THE U.S. MARKET, AND ABOUT**
5    **DEFENDANTS' FALSE CERTIFICATION OF COMPLIANCE WITH THE**
6    **TRADE AGREEMENTS ACT OF 1979.**

7    Defendants, in their brief, boldly represent to the Court that Relators' false claims
8    allegations are "taken directly from publicly available websites and industry materials." (Def.
9    Brief, 2:17-18, 22:6-24:6.)  *Such representation to the Court is false and misleading* –
10   Defendants fail to – and indeed cannot – cite even one word instance of public disclosure, prior
11   to the filing of this lawsuit, of the false claims alleged by Relators in this case, including, but not
12   limited to, Defendants' concealment of the country of origin of the technology in their fingerprint
13   identification products sold to the United States and to the State of California, Defendants' false
14   certification of compliance with antitrust laws prohibiting an agreement not to compete in the
15   U.S. market, and Defendants' false certification of compliance with The Trade Agreements Act
16   of 1979 ("TAA"), 19 U.S.C. §§ 2501–2581.

17   Notwithstanding nearly a year having passed since this case was unsealed, Defendants
18   have not produced to the Court a single contract, a single news article, a single website, or a
19   single declaration publicly disclosing that the country of origin of Defendants' fingerprint
20   identification equipment technology was France rather than Russia; that Defendants had in place
21   an non-competition agreement with Papillon ZAO, barring Papillon ZAO from competing for
22   business in the United States; or that Defendants' certification of compliance with The Trade
23   Agreements Act of 1979 was false.

24   Rather, as if throwing so much jello against the wall to see if something might stick,
25   Defendants cite to the Court a myriad of publicly available disclosures about *non-lie* issues, such
26   as news stories and websites about officers, sales, and the like (Def. Brf. 22:4-24:6).  Not a single
27   one of the subject documents contains a disclosure of the acts of fraudulent concealment and
28   false certification alleged by Relators in this case.  Defendants' allegations of pre-existing public

1  disclosure are all talk and no substance – red herrings calculated to distract the court away from

2  the issue of whether the "lies" at issue in this case were ever publicly known prior to this lawsuit.

3  *The plain truth is that they absolutely were not publicly disclosed prior to the filing of this qui*

4  *tam lawsuit by Relators..*

5

6  **III.   RELATORS, IN HIGH-LEVEL POSITIONS OF MANAGEMENT AND**

7  **INTERNAL COMPLIANCE WITHIN SAFRAN ARE ORIGINAL SOURCES.**

8       Relators's set forth in their TAC how they, as high executives within the Safran corporate

9  structure, are original sources in regard to Defendants' false claim regarding country of origin of

10  technology they sold.  Vincent Hascoet and Philippe Pacaud Desbois are *not* opportunistic

11  parasites who read about Defendants' *lie* in a news story.  (TAC 5-8.)

12       The Patient Protection and Affordable Care Act ("PPACA"), P.L. 111-148, modified the

13  standard for a relator to qualify as an "original source." Rather than requiring the relator to have

14  "direct and independent knowledge" of the alleged fraud, the PPACA eliminated the "direct"

15  knowledge requirement, and instead  required "knowledge that is independent of and materially

16  adds to the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(C).

17

18  **IV.   RELATORS' THIRD AMENDED COMPLAINT ALLEGATIONS OF FRAUD**

19  **SATISFY THE *EBEID* TEST OF BEING "SPECIFIC ENOUGH TO GIVE**

20  **DEFENDANTS NOTICE OF THE PARTICULAR MISCONDUCT WHICH IS**

21  **ALLEGED TO CONSTITUTE THE FRAUD CHARGED SO THAT THEY CAN**

22  **DEFEND AGAINST THE CHARGE AND NOT JUST DENY THAT THEY HAVE**

23  **DONE ANYTHING WRONG."**

24       Because it is an anti-fraud statute, an action brought under the FCA must satisfy the

25  particularity requirements of Fed.R.Civ.P. 9(b) ("Rule 9(b)").  *Bly-Magee v. Cal.*, 236 F.3d 1014,

26  1018 (9th Cir. 2001).

27       Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a party's pleading to contain

28  "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.

1   Civ.P. 8(a)(2).   However, Rule 9(b) requires that, when fraud is alleged, "a party must state with

2   particularity the circumstances constituting fraud " Fed.R.Civ.P. 9(b).

3          Rule 9(b) does not eliminate the Rule 8 requirements.  *Viacom, Inc. v. Harbridge*

4   *Merchant Services, Inc.,* 20 F.3d 771, 776 (7th Cir. 1994).  Considering Rule 8 and 9(b) together

5   "underscore(s) the emphasis placed on clarity and brevity by the federal pleading rules."  See

6   Allan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1217 (2d ed. 1990).

7          The essential elements of FCA liability are (1) a false statement (or fraudulent course of

8   conduct), (2) made with scienter, (3) that was material, causing (4) the government to pay out

9   money or forfeit moneys due.  *United States ex rel. Hendow v. University of Phoenix*, 461 F.3d

10  1166, 1174 (9th Cir. 2006), *cert. denied,* 550 U.S. 930 (2007).

11         Rule 9(b) requires only that the *circumstances* of fraud be stated with particularity; other

12  facts may be pled generally, or in accordance with Rule 8.  It is sufficient to allege **"particular**

13  **details of a scheme to submit false claims paired with reliable indicia that lead to a strong**

14  **inference that claims were actually submitted."**  (Emphasis supplied.)  *Ebeid ex rel. U.S. v.*

15  *Lungwitz*, 161 F.3d 993, 998-999 (9th Cir. 2010), cert. denied, 131 S. Ct. 801 (2010).

16         **A relator must provide enough detail to give the defendant notice of the particular**

17  **misconduct which is alleged to constitute the fraud charged so that the defendant can**

18  **defend against the charge and not just deny that they have done anything wrong.**  *Id.*  The

19  relator must also supply reasonable indicia that false claims were actually submitted.  *Id.*  The

20  complaint must refer to the statute, rule, regulation, or contract that conditions payment on

21  compliance with FDA regulations of drug production.  *Id.* at 1000.  Under Rule 9(b), allegations

22  must include details and facts setting out the "who, what, when, where, and how."  *Id.*  To

23  comply with Rule 9(b), allegations of fraud must be **"specific enough to give defendants notice**

24  **of the particular misconduct which is alleged to constitute the fraud charged so that they**

25  **can defend against the charge and not just deny that they have done anything wrong."**  *Id.*

26  at 1019 (Citation omitted) (Emphasis supplied.)

27         In the typical FCA *qui tam* action, such as where a private company overcharges the

28  United States under a government contract, the claim for payment is literally false or fraudulent.

*United States ex rel Hascoet v. Morpho, Case 5:15-cv-00746-LHK*                    -6-

1    *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996).  Congress, however,

2    has emphasized that the FCA should be broadly construed "to reach all types of fraud . . . that

3    might result in financial loss to the [g]overnment." *United States v. Neifert-White Co.*, 390 U.S.

4    228, 232 (1968).

5          Thus, courts have ruled that the FCA does not limit liability to facially false or fraudulent

6    claims for payment. Rather, the "broad construction of a 'false or fraudulent claim' [has] given

7    rise to two doctrines that attach potential [FCA] liability to claims for payment that are not

8    explicitly and/or independently false:  (1) false certification (either express or implied); and

9    (2) promissory fraud." *Hendow, supra,* 461 F.3d at 1171.

10         Relators plead their qui tam case with extraordinary particularity, by far satisfying both

11   Rule 8 and Rule 9(b).  The purpose of Rule 9(b) being to ensure that an accused defendant is

12   made sufficiently aware of the wrong of which he is being accused, there is no doubt that Safran

13   and Morpho know full well the wrong of which they are being accused.  Any contrary contention

14   is tongue-in-cheek.

15         Defendants' allegation, in Defendants' brief (Doc. 85-1, 1:20-2:5), that Relators fail to

16   state the "what, who, when, where, and how" in regard to the fraud on the government is nothing

17   more than a conclusory statement, without any explanation as to the specific alleged

18   deficiency.  That is because there is *no* such pleading deficiency – Relators' revised TAC amply

19   satisfies the "what, who, when, where, and how" requirement set forth in *Ebeid, supra,* 161 F.3d

20   at 1000.

21         In *U.S. ex rel. Driscoll v. Todd Spencer M.D. Medical Group, Inc.*, No. 13-17624, 2016

22   WL 4191896 (9th Cir. Aug. 9, 2016), the Ninth Circuit applied *Ebeid*.  In *Driscoll*, the Ninth

23   Circuit reversed the dismissal of relator Driscoll's complaint, holding that because certain of his

24   claims were pled with the particularity required by Rule 9(b), he should be permitted to amend

25   his complaint to address its deficiencies and narrow its scope.  Driscoll alleged that defendants

26   (1) conducted unnecessary CT scans and (2) "'unbundled' procedures in order to increase billings

27   artificially." Driscoll provided detailed examples of the alleged misconduct, including dates and

28   accounts of misconduct that he personally observed. Accordingly, the Court reasoned that the

*United States ex rel Hascoet v. Morpho, Case 5:15-cv-00746-LHK*                    -7-

1   allegations were not based on speculation, but were "sufficiently specific" to allow defendants to

2   answer them and state a defense.

3       In *United States v. United Healthcare Insurance Co., et al.*, 832 F.3d 1084 (9th Cir. Aug.

4   10, 2016), amended at No. 13-56746, 2016 WL 7378731 (9th Cir. Dec. 16, 2016), relator

5   Swoben alleged that various Medicare Advantage organizations and a physician group submitted

6   false certifications of the accuracy of patient diagnosis codes in order to increase Medicare

7   payments based on patient risk profiles. Specifically, Swoben alleged that defendants structured a

8   retrospective review of medical records that "identif[ied] and report[ed] only under-reported

9   diagnosis codes . . . not over-reported codes." In other words, defendants allegedly crafted a

10  review of medical records that "deliberately . . . avoid[ed]" the identification of improperly

11  submitted diagnosis codes. The Ninth Circuit held that Swoben's allegations satisfied Rule 9(b)

12  because they alleged "the who, what, when, where, and how of the misconduct charged."

13  Specifically, Swoben provided the dates of the retrospective reviews, the type of software used

14  for the reviews, and the dates the defendants used the reviews to report results to CMS. Despite

15  Swoben's failure to "describe any specific instances of falsity," the Court held that Swoben had

16  alleged "particular details of a scheme to submit false claims paired with reliable indicia that lead

17  to a strong inference that claims were actually submitted." **The Court also held that Swoben's**

18  **failure to differentiate between defendants and allege separate allegations for each did not**

19  **contravene Rule 9(b):  "There is no flaw in a pleading, . . . where, as here, collective**

20  **allegations are used to describe the actions of multiple defendants who are alleged to have**

21  **engaged in precisely the same conduct."**

22

23  **V.      RELATORS' THIRD AMENDED COMPLAINT SATISFACTORILY PLEADS**

24  **THEY HAVE PERSONAL KNOWLEDGE OF DEFENDANTS' ALLEGED**

25  **FRAUDULENT SCHEMES, INCLUDING THE ROLE OF SAFRAN U.S.A., INC.**

26  **A.      The Public Disclosure Bar.**

27      Under the FCA, the "public disclosure" bar precludes qui tam suits where there has been

28  a public disclosure of the fraud, unless the whistleblower qualifies as an "original source" of the

1  information.  This so-called "public disclosure bar" is designed to weed out "parasitic" actions

2  from those brought by whistleblowers with true inside knowledge of fraud.  The classic example

3  of a parasitic action is one brought by someone who has read a newspaper story about fraud.

4        The Ninth Circuit in *United States ex rel. Hartpence v. Kinetic Concepts, Inc.,* 792 F.3d

5  1121 (2015), clarified the requirements for a relator to meet the "original source" of the

6  information exception to the public disclosure jurisdictional bar. The Ninth Circuit joined a

7  majority of other circuits in holding that, to qualify as a relator in a circumstance where an FCA

8  claim has been publicly disclosed before the whistleblower has filed a complaint, the whistle-

9  blower does not need to allege – let alone meet and overcome – the "hand in the public

10  disclosure" requirement. Stated differently, *Hartpence* allows a whistleblower who is the first to

11  file a FCA claim regarding a violation that has been publicly disclosed, to pursue claims in

12  federal court without having to grapple with the judicially-imposed "hand in the public

13  disclosure" doctrine.  By removing this requirement, the Ninth Circuit removed a key barrier to

14  *qui tam* claimants in the Ninth Circuit.

15        **B.**     **Relators' Qualification as Original Sources.**

16        Relators Hascoet and Desbois in their revised TAC (Doc. 84) satisfactorily allege they

17  obtained the information underlying their allegations in the Third Amended Complaint via their

18  work for Defendants; they are insider "original sources," as that term is used in the context of the

19  FCA and the CFCA.  They plead that: (a) they had direct, firsthand, and independent knowledge

20  information on which the allegations of false claims herein are based, and they obtained such

21  knowledge entirely through their own labors and their jobs with Safran Group, S.A., entities,

22  unmediated by anything else; (b) they obtained their knowledge about Defendants' false claims

23  through their own labors unmediated by anything else; (c) they rely entirely on information

24  received because of their work on compliance issues for entities within Safran Group, S.A.

25  Relators collaborated with one another in the analysis and presentation of such information.  *See*

26  TAC ¶¶ 5-8; Declaration of Vincent Hascoet in Opposition to Motion to Dismiss; and

27  Declaration of Philippe Pacaud Desbois in Opposition to Motion to Dismiss.

28  \\\

---

*United States ex rel Hascoet v. Morpho, Case 5:15-cv-00746-LHK*      -9-

1       Relator Philippe Pacaud Desbois was a high-level employee of Safran Group, S.A., for

2 seven years, from November, 2007, to September 2014.  Within "Safran – Aerospace, Defence,

3 Security," Desbois served as Chief Financial Officer Russia ("Delegue Finance Russie"), over ten

4 legal structures with 500 to 600 employees and annual turnover of $500 million.  Desbois led the

5 full scope of finance function in all Safran's entities in Russia, including four production sites

6 and a joint venture; he supported the mother companies of the subsidiaries in strategic aspects for

7 Russia; he deployed a shared service center for support functions (Finance, HR, IT and Admini-

8 stration); and he restructured the group of companies for tax optimization.  Desbois later served

9 as Chief Executive Officer of Morpho Russia ("Morpho Rus").  In such security division,

10 Desbois handled the acquisition and integration of a new company, he supervised manufacturing

11 and supply chain activities, and he had a close working relationship with Administration.  He

12 simultaneously was Safran's country delegate for finance in Russia for several years, until mid-

13 2014.  In his role as the CEO of Morpho Russia, Relator Desbois occupied a position of strategic

14 importance.  Desbois accordingly, in his capacity of strategic importance as CEO of Morpho

15 Russia, became informed of the July 2, 2008, Technology License Agreement between Sagem

16 Sécurité SA ("Sagem") and Papillon ZAO.  Debois, as CEO of Morpho Russia, was provided

17 documentation and oral reports in the course of business, reflecting the source and marketing of

18 technology for Defendants' fingerprint identification products, and regarding a policy and

19 concerted effort by Defendants to conceal the source of such technology from American

20 government entities and NATO, together with an agreement in restraint of trade between

21 Defendants and the Russian corporation Papillon ZAO to divide up the world market in terms of

22 geographic regions.  In Desbois' capacity as the CEO of Morpho Russia, Desbois was informed

23 of the license contract with Papillon; because Desbois felt he had to compete with Papillon in

24 some markets, he was explained the full story of Morpho's relationship with Papillon; Desbois

25 was told, in the ordinary course of business, that Papillon is an unofficial partner with Morpho

26 and that Morpho accordingly should not compete with Papillon.  *See* TAC ¶ 6.

27       Relator Hascoet, from July 23, 2012, through May 31, 2014, served in Moscow, Russia,

28 as Deputy Director of the Russian branch of PowerJet, a joint venture of Snecma and NPO

1   Saturn. Incident to his work with PowerJet, Relator Hascoet became familiar with myriad areas
2   of widespread serious and material noncompliance, most of which he raised in detail in a
3   comprehensive report to PowerJet management in Moscow and Snecma management at Snecma
4   Siège in Paris.  These areas included, but were not limited to, myriad acts of bribery, unlawful
5   gifts, bogus transactions, tax evasion, and false certifications of compliance with laws.  As
6   Branch Manager of PowerJet, Relator Hascoet, like Relator Desbois, was also in charge of an
7   ongoing relationship with the Russian administration (taxes, pension fund, etc.), carrying the
8   exact same penal responsibilities as borne by Relator Desbois had as the CEO of Morpho Russia.
9   Further, Relator Hascoet, in the same manner as Relator Desbois, held such responsibilities
10  jointly with Hascoet's Chief Accountant. Following Mr. Hascoet's complaints and reports about
11  these compliance issues, his employment was terminated.  Because of Relator Hascoet's
12  comprehensive internal compliance work, he and Relator Desbois and Relator Hascoet, in the
13  course of business, engaged in extensive professional communications with one another
14  regarding compliance issues, including especially the areas of noncompliance jointly alleged by
15  Relators in this *qui tam* action.  Desbois and Hascoet also closely collaborated in regard to
16  communicating with the U.S. Securities & Exchange Commission ("SEC") regarding
17  Defendants' serious issues of noncompliance.   *See* TAC ¶ 7.
18          From several months preceding the filing of this *qui tam* lawsuit forward, Relators
19  regularly and meticulously monitored news media reports, in American, French, Russian, and
20  other European news media, in English language, French language, and  Russian language, in
21  regard to any pre-lawsuit news media reports of Defendants' conduct relative to Morpho
22  fingerprint identification systems.  Prior to the filing of this *qui tam* action, there was absolutely
23  no public disclosure whatsoever – via any news story, via any website, via any court or
24  administrative filing, or via or any other means – of the false claims pled herein prior to the filing
25  of this *qui tam* action.  TAC ¶ 8.  Defendants' argument to the contrary is absolutely false, is an
26  exercise in smoke and mirrors, and is a blatant and shameful attempt by Defendants to mislead
27  the Court.
28  \\\

1
2
3

**VI.    FRAUDULENT CONCEALMENT INCIDENT TO DEFENDANTS' SALES TO SUBSIDIARIES, CONTRACTORS, AND INTERMEDIARIES ARE PLED AND ACTIONABLE.**

4       Defendants imply they deserve a "Get Out of Jail Free" card  because their sales to the
5   U.S. and the State of California were via subsidiaries and other intermediaries who received the
6   government monies.  (Def. Brf., 12:16-13:4, f.4.)   Defendants' reliance upon the Declaration of
7   Yves Charvin (Doc. 85-2) and the Declaration of Stephane Abrial (Doc. 85-3) is disingenuous,
8   since the testimony of Chavin and Abrial is conclusionary and lacks foundation.  See Declaration
9   of Vincent Hascoet and Philippe Pacaud Desbois, filed therewith.  This argument by Defendants
10  is naive, is a throw-back to the pre-FERA days, and simply does not fly in the post-FERA era.
11  FERA in 2009 dispelled for once and for all any doubt about the application of the FCA to
12  indirect sales to the government, through other entities (subsidiaries, subcontractors, or third
13  parties) receiving government funds for a defendant's products or services.  Defendants Morpho
14  and Safran are not insulated from liability because they sold their products – and their untruth
15  about country of origin – to subsidiaries and other intermediaries that actually received the
16  government funds.

17      The TAC pleads in detail that Defendants made sales through subsidiaries.. TAC ¶¶ 9-13.
18  Further, the TAC further sets forth in excruciating detail that Defendants made sales through
19  their subsidiaries Morpho Trak and Morpho Trust to defense contractor Lockheed Martin, who in
20  turn sold Defendants' equipment to the government, in return for taxpayer dollars.  TAC ¶¶ 23-
21  29.  It is not the province of this court to ignore FERA and rule as if the FCA and CFCA are
22  applicable only to direct sales and have no application to sales done through subsidiaries and
23  subcontractors.

24

25  **VII.   DEFENDANTS' ARGUMENT THAT RELATORS' THIRD AMENDED**
26  **COMPLAINT FAILS TO ADEQUATELY ALLEGE SCIENTER IS BASELESS.**

27      Relators' Third Amended Complaint is replete with allegations regarding scienter.  The
28  TAC expressly pleads that "[m]anagerial employees of the of Safran Defendants, in doing the

1   acts and things described in this Complaint, were acting within the course and scope of their

2   respective agencies and/or employment, with the knowledge, consent, and direction of top

3   management of Safran, S.A." TAC ¶ 9(f). In addition, the TAC asserts that "each Safran

4   Defendant worked at the direction of Safran, S.A., and each other Safran Defendant, to injure the

5   United States and the State of California." TAC ¶ 9(g). Further, the TAC specifically pleads that

6   DOJ Security Requirements obligated the Defendants and their agents to disclose their use of

7   Papillon ZOE as a subcontractor supplying algorithms for Defendants' fingerprint identification

8   products, which disclosure the Safran Defendants "wilfully" and "knowingly" did not make

9   (TAC ¶ 29(g)-(h). The TAC further alleges that U.S. contracts contain a certification by the

10  contracting Safran entity that it had required all subcontractors to adhere to all security

11  requirements of the contracts, which certification by Robert A. Eckel, the contracting executive

12  for the contracting Safran entity, was "knowingly false." TAC ¶ 29(b)   The TAC pleads an

13  outright "agreement" by Defendants, with Papillon ZOE, to divide up the world market, in

14  violation of the Sherman Antitrust Act (15 U.S.C. §§ 1-7) and all other U.S. antitrust laws

15  prohibiting activities that restrict interstate commerce and competition in the marketplace. TAC

16  ¶¶ 31-32. Finally, the TAC pleads that Defendants' management "knowingly" engaged in the

17  conduct constituting each and every alleged violation of the FCA and the CFCA. TAC ¶¶ 39,

18  43, 47, and 50.

19

20  **VIII.  DEFENDANTS' ARGUMENT THAT U.S. CUSTOMS RULINGS INSULATE**

21  **DEFENDANTS FROM LIABILITY FOR FRAUDULENT CONCEALMENT OF**

22  **COUNTRY OF ORIGIN IS INCORRECT, WHERE SUCH ARGUMENT**

23  **RELIES ON RULINGS REGARDING SOFTWARE ONLY *PARTLY* CREATED**

24  **IN A NON-DESIGNATED COUNTRY.**

25      Relators' allege that one of the false claims made by Defendants is a certification of

26  compliance with The Trade Agreements Act of 1979, *supra*. TAC ¶ 34 (a)-(c). In general, a

27  product is TAA compliant if it is made in the United States or a "Designated Country" as set forth

28  in the "Designated Countries" list set forth in FAR 25.003. The Russian Federation is *not* on

1  such "Designated Countries" list, and at no time during the time pertinent to this litigation was

2  the Russian Federation on such list.

3      Here Defendants rely primarily on a Customs Ruling that deals with *partial* creation in a

4  country that is not a "Designated Country," rather than *complete* creation.  There is a *huge*

5  difference., such that such Customs Ruling is not controlling.

6

7                              **CONCLUSION**

8      Defendants' supporting papers are more important for what they *don not* say than what

9  they *say*:

10     Defendants produce ZERO evidence of pre-lawsuit public disclosure of Relators' alleged

11  country-of-origin false claim, of their claim of false certification of antitrust laws compliance,

12  and of their claim of compliance with The Trade Agreements Act.

13     Defendants produce ZERO evidence that Relators, in their high-level management and

14  compliance positions within Safran, were not in a position to have firsthand knowledge of the

15  enormous act of deception practiced by Safran in regard to the country of origin of their

16  fingerprint identification technology.

17     Defendants produce ZERO evidence that they truly do not understand the false claim that

18  Relators make against them in regard to Defendants' lie about country of origin of Defendants'

19  fingerprint identification representation.

20     Defendants produce ZERO law to support their contention that the False Claims Act, as

21  amended by FERA, does not apply to Defendants' indirect sales to the United States and the

22  State of California, through subsidiaries, contractors, and other intermediaries who are recipients

23  of government funds.

24     Defendants argue ZERO specifics as to what is missing in regard to the "who, what,

25  when, where, and how" test for Rule 9(b) compliance.

26     Defendants have successfully blocked discovery – and have otherwise successfully

27  stonewalled this case – long enough.

28  \\\

*United States ex rel Hascoet v. Morpho, Case 5:15-cv-00746-LHK*                    -14-

1         It is unfair to Relators, to the Court of Appeals, and, least of all, to federal and state

2   taxpayers, to kick this case up to the 9th Circuit to correct prejudicial errors that Defendants urge

3   the district court to make, as if re-writing the FCA.

4         For the foregoing reasons, Relators respectfully implore the district court to deny

5   Defendants' motion and issue a new case management order permitting discovery to begin,

6   establishing a new trial date and other new deadlines.

7

8   Dated: June 9, 2017              Respectfully submitted,

9

10                                         BARTLEY LAW OFFICES
                                      ATTORNEYS FOR RELATORS

11                                         VINCENT HASCOET AND
                                      PHILIPPE PACAUD DESBOIS

12

13                         By:    _____

14                                    Daniel Robert Bartley

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

2

    I declare I am employed in the County of Santa Clara, State of California, by Bartley Law Offices, 1999 South Bascom Avenue, Suite 700, Campbell, CA 95008-2205. I certify that I am over the age of 18.

3

4

    I hereby certify that on today's date, I electronically filed the foregoing **"RELATORS' POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS RELATORS' THIRD AMENDED COMPLAINT PURSUANT TO FRCP 12(b)(1) AND 12(b)(6)"** with the Clerk of the United States District Court for the Northern District of California by using the District Court's CM/ECF system. I certify that all the counsel listed below are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

5

6

7

8

| | |
|---|---|
| Rebecca Falk, Esq. | Suneeta D. Femandes, Esq. |
| Assistant United States Attomey | Deputy Attorney General |
| Office of the United States Attorney | Office of the Attorney General of Califomia |
| 450 Golden Gate Avenue, Box 36055 | 455 Golden Gate Avenue, Suite 11000 |
| San Francisco, CA 94102-3495 | San Francisco, CA 94102-7004 |
| Fax 415-436-6748 | Telephone 415-703-1507 |
| Rebecca.Falk@usdoj.gov | Fax 415-703-1234 |
| | Suneeta.Femandes@doj.ca.gov |

9

10

11

12

Paul B. Salvaty, Esq.
Samantha M. Kantor, Esq.
Stephanie Yonekura, Esq.
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone 310-785-4600
Fax 310-785-4601
Paul.Salvaty@HoganLovells.com
Samantha.Kantor@HoganLovells.com
Stephanie.Yonekura@HoganLovells.com

13

14

15

16

17

18

    I declare under penalty of perjury, under the laws of the United States and the State of Califomia, that the foregoing is true and correct and that this declaration was executed on this 9th day of June, 2017, in the City of Hollister, San Benito County, California.

19

20

21

*/s/Daniel R. Bartley*

22

_____
Daniel R. Bartley

23

24

25

26

27

28

*United States ex rel Hascoet v. Morpho, Case 5:15-cv-00746-LHK*